IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAKIA WALTON, DANYLLE           )
MCHARDY, GEORGE DE LA PAZ JR.,  )
KEVIN JACOBS, and FEIONA DUPREE,)
Individually, and on behalf of all others )
similarly situated,              )          CIVIL ACTION FILE NO.
                                 )          1:19-CV-4466-LMM
        Plaintiffs,              )
                                 )
v.                               )
                                 )
PUBLIX SUPER MARKETS, INC.,      )
                                 )
        Defendant.               )

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Plaintiffs in this Fair Labor Standards Act case are current and former Deli and Bakery Department Managers for Publix Super Markets, Inc., an employee-owned grocery store chain that for over twenty years has been named one of the "100 Best Companies to Work For" by *Fortune*.  After long careers having never before complained about their salaried, management-level status, Plaintiffs now claim that Publix misclassified their jobs as exempt from overtime regulations. They ask this Court to approve notice to other allegedly similarly situated managers across seven southeastern states stating that those, too, might be able to join this suit.  Plaintiffs' meandering collective definition and various

amendments, however, moot their motion.  Even if they don't, the claims of opt-in Plaintiff Jovanovich Roberts and the claims of any potential plaintiff who has not worked for Publix in Georgia do not arise out of or relate to Publix's conduct or operations in Georgia.  Coupled with Plaintiffs' failure to prove the similarity required for conditional certification of a collective, that jurisdictional defect fatally undermines Plaintiffs' motion.

## I.      BACKGROUND

This case is barely two months old and Plaintiffs have, as Publix noted in its motion to dismiss, proposed at least six different definitions of a putative collective (Docs. 1, 4, 9 (two definitions), 14, and 16).  Their inability to define the collective they ask this Court to recognize has led them to amend their motion for conditional certification once (Doc. 17) and their complaint twice.  (Docs. 4 and 26).  Critically, they amended their complaint—which Publix moved to dismiss because of defects in the collective definition, among other reasons—*after* the certification motion now before this Court.  Whatever the scope of the proposed collective, Plaintiffs look to litigate claims on its behalf related to Publix's alleged

misclassification of collective members as exempt from the FLSA's overtime requirements. (Doc. 26 at 11).[1]

## A.    Publix Super Markets, Inc. – An Overview

Publix is an employee-owned supermarket chain that operates 1,241 stores across Georgia, Florida, Alabama, North Carolina, South Carolina, Tennessee, and Virginia. (Company Overview – Facts & Figures, *available at* https://corporate.publix.com/about-publix/company-overview/facts-figures) (last visited on December 20, 2019 ("Company Overview")). 187 of Publix's locations are in Georgia, while Florida holds 808, almost two-thirds of Publix's locations. (*See* Company Overview). Publix's headquarters and principal place of business are in Lakeland, Florida. (Decl. of Erin King at ¶ 4. attached as Ex. A).

---

[1] Plaintiffs' hither and yon collective definitions leave Publix in the dark as to the precise scope of the collective Plaintiffs ask this Court to conditionally certify. This response focuses on Bakery and Deli Managers—the only two positions worked by the named and opt-in plaintiffs—because even that limited scope highlights the futility of Plaintiffs' certification motion.

The presence of Assistant Department Managers in Plaintiffs' proposed collective definition(s) injects additional differences that justify declining to certify a collective. (*See* Publix's Motion to Dismiss, Doc. 29 at 16-19). After all, Assistant Managers and Department Managers were never classified the same during the relevant time period, and have different job duties. (*See* Doc. 29-1 at ¶¶ 12-15, 17-18). The differences between Assistant Managers and the Department Managers who supervise them are so great, in fact, that dismissal is the appropriate remedy, not merely declining to certify a collective. (*See* Doc. 29).

Generally, each Publix store contains, and contained during the relevant time period, six departments, two of which are the Bakery and Deli Departments, each of which has a manager.[2]  (Decl. of Jasmin Ovcina at ¶ 7, attached as Ex. B). Publix's store formats vary for many reasons.  Geography, demography, and market size all influence the size, layout, and stocked inventory at a given store. (Decl. of Bruce Humphries at ¶ 9, attached as Ex. C).  Those differences can change how work within a store is performed.  (*Id.* at ¶ 10).  The influence also flows to the way work is performed in individual store departments.  (*Id.* at ¶ 10).  Higher sales volume, for instance, leads to more customer interactions, which in turn requires department managers in high volume locations to devote more time to managing Associates' customer service skills than in lower volume stores.  (*Id.* at ¶ 11).  At bottom, despite the uniform delivery of customer service excellence, each Publix store differs from its sister stores based on a variety of factors.

## B.   Different Stores and Departments Operate Differently and Different Managers Manage Differently

How Bakery and Deli Departments operated from store to store during the relevant time period varied significantly.   Higher sales volume stores naturally

---

[2]  On March 30, 2019, Publix reclassified all department managers, including Bakery and Deli Managers, from exempt to non-exempt.  (King Decl. at ¶ 13).  A few months later, named plaintiff Takia Walton was terminated for violating the FLSA by depriving his employees of wages due.  (Humphries Decl. at ¶ 5).

required that managers devote more attention to ensuring their Associates attend to customer needs rapidly, while still following Publix's operational requirements for the department.   (Humphries Decl. at ¶ 11).   Higher sales volumes also required more Associates to staff each department, which in turn required more personnel management and less production assistance from managers.  *Compare* Decl. of Greg Switzer at ¶ 3, attached as Ex. D, *with* Decl. of Andrew McGee at ¶ 3, attached as Ex. E).  The nature of the departments created inter-departmental variation, too.   In particular, the types of work necessary in a Bakery was meticulous and involved processes that could generate, by their very nature, more "production" hours than did the types of work done in the Deli.  (Humphries Decl. at ¶ 15).  Deli Departments generally had more tasks to complete, including more face-to-face customer interaction and on-demand requests, because of the hectic nature of the department.  (McGee Decl. at ¶ 11).

The departments also varied during the relevant time period by products offered.   With different products came different processes, different oversight requirements, and different ordering requirements.   (Humphries Decl. at ¶ 14). Regardless of store volume, Deli Departments tended to have three to four times as many Associates, so staffing and labor management practices differed as compared to Bakery Departments.  (*Id.*).

With that substantial amount of departmental variation, it is no surprise that Bakery and Deli Department Manager positions differed as well.  In one store, department managers, prior to their reclassification in March 2019, had ample authority in hiring, promotion, discipline, and termination decisions in their department. (McGee Decl. at ¶ 14; King Decl. at ¶ 7).  In another, the store manager afforded the Bakery Manager more discretion than the Deli Manager because the former demonstrated particularly astute judgment, or had more experience.  (Decl. of Diane Hernandez at ¶ 12, attached as Ex. F; *see also* McGee Decl. at ¶ 18). Managers, of course, also differed in their management styles, which affected the way they perform their jobs on a day-to-day basis.  (*See* King Decl. at ¶ 18; Hernandez Decl. at ¶ 16).

To manage these abundant differences efficiently, Publix store managers and district managers empowered those beneath them to perform adaptive management.  (Ovcina Decl. at ¶ 16-17).  Department managers who wanted to focus on training and developing associates beneath him or her, for example, were allowed to do so.  (Ovcina Decl. at ¶ 16).  Managers were even allowed to develop their own training protocols and curriculum that suit their particular store and department.  (Ovcina Decl. at ¶ 17).

## C.    The Named Plaintiffs Are Distinguishable

Stemming from the store and department differences outlined above, the named Plaintiffs are not similar as compared to each other, much less when compared to the thousands of other potential members of their proposed collective.  Each worked in a different Publix location during the relevant time period, and many worked at multiple locations, each of which differed in sales volume, and geographic location.  Some named Plaintiffs began working for Publix in Florida and later transferred to Georgia locations, while others spent their entire career in Georgia.  Only one, George De La Paz, Jr., worked as a Deli Department Manager, while the other four all worked as Bakery Managers.  (*See* Docs. 9-1 to 9-5).  None of the named Plaintiffs worked as Assistant Department Managers during the time relevant to this case.  (*See id.*).

## II.    ARGUMENT

Plaintiffs' Second Amended Complaint moots this motion.  If this Court reaches other issues, the motion still fails because Plaintiffs ask this Court to conditionally certify a disparate collective that would irretrievably bog down these proceedings for two reasons.  First, this Court lacks personal jurisdiction over the vast majority of the managers Plaintiffs seeks to include.  Second, Plaintiffs' self-

serving, boilerplate declarations—the only evidence offered to support certification—fail to justify proceeding collectively.

## A.   The Operative Complaint Moots Plaintiffs' Certification Motion

Motions for conditional certification seek court approval for notice to be sent to collective members whose membership is defined by an FLSA plaintiff's complaint.[3]   It follows that amending an FLSA complaint moots motions,

---

[3]   Under § 216(b), one or more employees may sue for alleged violations of overtime regulations "for and in behalf of himself or themselves and other employees similarly situated."   The phrase "similarly situated" has spawned a two-stage procedural schematic—conditional certification and decertification—to answer the question of who qualifies.   Because the certification process is judge-made, courts must conditionally certify a collective only "in appropriate cases." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1111 (11th Cir. 1996).

At that first stage, Plaintiffs, not Publix, must establish that: (1) they are "similarly situated" to the putative class members they seek to represent; and (2) a sufficient number of those individuals wish to join this case. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).   Where enough record evidence clarifies that notice is inappropriate, courts can refuse to conditionally certify a collective. *See, e.g., Brooks v. BellSouth Telecomms., Inc.*, No. 1:07-CV-3054-ODE, 2009 WL 10699685, at *7-8 (N.D. Ga. Feb. 10, 2009).

Plaintiffs describe their burden as "very low," and "particularly low" in this circuit (Doc. 9 at 15-16), but in reality it is "low" only as compared to the burden at decertification. *See Webber v. Coast Dental*, No. 8:12-cv-01505, 2013 WL 935772, at *3 (M.D. Fla. Mar. 11, 2013) ("[C]onditional certification should 'be exercised with discretion and only in appropriate cases.'") (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir. 1983)).   As this Court has explained, "[w]here plaintiffs seek

derivative of the proposed definition in the superseded pleading.  *See Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 199 (D.D.C. 2018) (denying as moot motion for conditional certification filed before complaint amendment); *Donatti v. Charter Commc'ns, L.L.C.*, No. 11-4166-CV-C-MJW, 2013 WL 3807302, at *2 (W.D. Mo. July 22, 2013).  That's all the more true where, as here, the amended pleading contains multiple collective definitions such that neither a defendant nor the court can even determine the scope of the collective.   Because Plaintiffs' Second Amended Complaint moots this motion, it should be denied.

Even if the motion is not moot, properly scrutinizing it reveals: (1) a lack of jurisdiction over about 85% of the claims in Plaintiffs' putative collective, and (2) a failure to show that the remaining 15% of all Deli Department and Bakery Department Managers are similarly situated, that anyone working within one of those roles was similarly situated to one another, or that any of the putative collective members were subjected to an unlawful policy or procedure.

**B.     Any Collective that this Court Conditionally Certifies Cannot Include Employees from Outside Georgia**

As discussed in Publix's Motion to Dismiss, this Court lacks personal jurisdiction over the claims of Publix employees, like opt-in plaintiff Jovanovich

---

to send court-approved notice . . . courts should treat those requests with a higher level of scrutiny." *Brooks*, 2009 WL 10699685, at *5.

Roberts, who worked outside of Georgia.  (Doc. 29 at 7).  Anyone who opts into this case is a party plaintiff who, like the named Plaintiffs, must establish personal jurisdiction over Publix as to his or her claims.  *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (holding that plaintiffs bear the burden of producing evidence to support jurisdiction).  Neither Roberts nor any other manager who lives in or worked outside of Georgia can do so.  Including Roberts and other out-of-Georgia managers in a conditionally certified collective would thus violate Publix's due process rights.

This Court's decision in *Dennis v. IDT Corp.*, 343 F. Supp. 3d 1363 (N.D. Ga. 2018), bolsters this analysis.  There, Erik Dennis pursued a Telephone Consumer Protection Act class action under Rule 23, and IDT argued that *Bristol-Myers Squibb Co. v. Superior Ct. of Cali., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017), barred personal jurisdiction over claims of non-resident unnamed class members.  *Dennis*, 343 F. Supp. 3d at 1364.  Disagreeing, this Court reasoned that: (1) Rule 23's due process protections, (2) the impracticality of analyzing personal jurisdiction for absent class members, and (3) the absence of federalism concerns justified declining to extend *Bristol-Myers.  Dennis*, 343 F. Supp. 3d at 1366-67.

No rule-based due process protections exist here.  As this Court recognized, mass actions, like this putative FLSA collective, do not "ensure . . . a unitary

coherent claim" and thus afford no "unitary, coherent defense." *Id.* at 1366. While Publix's motion to dismiss means that Publix has not yet answered the amended complaint or asserted its various defenses, should Plaintiffs avoid dismissal at the pleadings stage, Publix will assert defenses that would apply to some Plaintiffs and opt-in plaintiffs, but possibly not all. Indeed, the various defenses that Publix would assert are among the reasons why this Court should not permit this case to proceed on a collective basis. *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (noting that courts considering whether to decertify look at, among other things, "the various defenses available to defendant[s] [that] appear to be individual to each plaintiff"). What's more, each opt-in plaintiff, even if "similarly situated," presents potential differences in claim proof, near certain differences in damages proof (everyone worked different days and different numbers of hours), and variations in fact-based defenses depending on job duties that vary from person to person.

Practical concerns like those in *Dennis* also do not exist. As "[i]n mass tort actions," in FLSA collectives "each plaintiff"--opt-ins and named plaintiffs--are "real part[ies] in interest." *Dennis,* 343 F. Supp. 3d at 1366; *see also Mickles v. Country Club Inc.*, 887 F.3d 1270, 1273 (11th Cir. 2018); *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) (holding that party plaintiffs have the status in

relation to claims in the suit as named plaintiffs).  Because of the nature of the claims here—alleged failure to pay overtime wages due—this Court need only ask where an opt-in plaintiff worked for Publix and from where their pay originated to determine if personal jurisdiction exists.  That information, unlike an unknown class member's contacts with the forum, *see Dennis*, 343 F. Supp. 3d at 1366, is easily ascertainable based on Publix's own records.  And even if it was not, the binary nature of the inquiry here—the opt-in either worked and was paid in Georgia, or not—eliminates the impracticality worry present when applying *Bristol-Myers* to Rule 23 classes.  *See Dennis*, 343 F. Supp. 3d at 1366.

The presence or lack of "federalism concerns" that animated *Bristol-Myers*, and partially underlay *Dennis*, has no bearing on the personal jurisdiction analysis applicable in federal question mass actions like this case.  Due process under the Fifth Amendment requires a minimum contacts analysis just like the Fourteenth Amendment requires in state court in federal question cases where the statute at issue lacks a nationwide service provision.  *See* Fed. R. Civ. P. 4(k); *see also* Doc. 29 at 12.  Under the circumstances this case presents, then, a lack of federalism concerns is neither here nor there when it comes to analyzing personal jurisdiction—the analysis is the same regardless.

Because this Court lacks personal jurisdiction over Roberts and other out-of-state opt-ins, certifying a nationwide collective that includes those people would violate Publix's due process rights.  *See Bristol-Myers Squibb*, 137 S. Ct. at 1780; *see also id.* (holding that the "primary concern" in the personal jurisdiction inquiry is "the burden on the defendant").  Publix operates 1,241 stores across seven southeastern states, only 187 of which are in Georgia. (*See* Company Overview).  That means this Court lacks personal jurisdiction over about 85% of Publix's Deli and Bakery Managers whom Plaintiffs want to represent as opt-in party plaintiffs.

Certifying a nationwide collective under those circumstances would create practical problems, too.  If this Court certifies the collective that Plaintiffs request, about 85% of notice recipients would believe they could join this lawsuit, but not realize that this Court lacks authority to adjudicate their potential claims.  Any opt-in consent forms filed by that 85% would each be subject to an immediate motion to dismiss under Fed. R. Civ. P. 12(b)(2).  Resolving a large number of such motions piecemeal creates inefficiency, while declining certification now based on *Bristol-Myers* precludes that ever arising.[4]  Regardless, due process demands that

---

[4] If Plaintiffs ever contest Publix's assertion that a particular opt-in plaintiff neither worked nor lived in Georgia, it will remain Plaintiffs' burden—not Publix's—to present or seek evidence refuting such an assertion.  *See Louis Vuitton*, 736 F.3d at

claims lacking connection to Publix's Georgia operations not be artificially and temporarily given life by sending their holders notice of this lawsuit. Plaintiffs' conditional certification motion should thus be denied.

### C. The Named Plaintiffs' Self-Serving Declarations are Insufficient to Sustain Their Burden to Establish a Basis for Conditional Certification

Courts in this district regularly certify FLSA collectives. But rarely do they conditionally certify a nationwide collective or otherwise a broadly scoped class when plaintiffs submit insufficient evidence on interest in the litigation, and similarity among putative collective members. *See Dybach*, 942 F.2d 1562 (holding that conditional certification requires plaintiffs to show (i) whether there are other employees of the employer who wish to "opt-in;" and (ii) whether these employees are "similarly situated" with respect to both their job duties and their pay). Where, as here, the proposed collective is comprised of two groups distinct from one another whose members are internally distinct too, certification is rarer still. And where, as here, plaintiffs fail to identify an unlawful policy or practice that binds otherwise dissimilar roles and employees together, certification becomes a mirage.

---

1350. Satisfying that burden itself would lead to numerous individualized factual determinations antithetical to collective proceedings.

1.    *The Declaration Testimony of the Named Plaintiffs is Insufficient*

Plaintiffs' evidence here falls short because: (1) five declarations cannot justify a potential collective of thousands, and (2) those declarations do not establish similarity.

      i.    The testimony of five cannot justify a collective of over several thousand

Plaintiffs represent about 0.5% of the Deli Managers in Georgia, and 2.1% of Bakery Managers in Georgia.  That already miniscule number falls further when extrapolated out across Publix's operations—Plaintiffs represent only 0.04% of Publix's Deli Managers, and 0.16% of its Bakery Managers.[5]

That microscopic percentage of potential collective members cannot justify conditional certification.  In *Linscheid v. Natus Medical Inc.*, for example, this Court refused to conditionally certify a class where plaintiffs and one opt-in comprised only 16% of the potential collective, and where plaintiffs submitted no other

---

[5]  These percentages are based on the number of Publix stores (1,241 total, 187 in Georgia, 808 in Florida), each of which has a Deli and Bakery Department Manager.  (Ovcina Decl. at ¶ 7).  Here again, Plaintiffs' schizophrenic collective definition makes precision impossible.  The numbers outlined above only hold if the collective is limited to Bakery and Deli Managers.  If Plaintiffs' broadest definition is used, Plaintiffs become even more of a statistical anomaly, not a significant showing of interest in this litigation.  What's more, attrition and a multi-year relevant time period almost certainly make the actual size of the putative collective even larger than 2,482 current Deli and Bakery Managers.

evidence to "show *other* employees wish[ed] to opt in."  No. 3:12-CV-67-TCB, 2012 WL 12861603, at *3 (N.D. Ga. Nov. 15, 2012) (Batten, J.).  The paucity of evidence is starker here.  Plaintiffs comprise a much smaller percentage of the potential collective, and like the *Linscheid* plaintiffs, they submit very little to show others want to join this case.[6]  Balanced against that tepid demonstration are twelve declarations from current Publix employees, all of whom disclaim any interest in joining this suit.  Absent more of a showing that others want to join suit, conditional certification is improper.  *See Dybach*, 942 F.2d at 1567 (holding that courts must find "that there are other employees of the department-employer who desire to opt-in" before conditionally certifying a collective).

### ii.   Plaintiffs' testimony fails to establish similarity

Whatever the evidence that others want to join, Plaintiffs also fail to establish that they are similarly situated.  *See* 29 U.S.C. § 216(b).  To show similarity, Plaintiffs present only one largely form declaration signed by seven different people.  (*See, e.g.*, Doc. 9-2).  That declaration, however, offers no basis to

---

[6]  Since filing suit, Plaintiffs have filed consents to join from Charles Bryant, Michael Adesiyan, Kristie McNair, and Jovanovich Roberts.  Their inclusion only elevates the participation rate to about three percent of the potential collective.  Bryant and Adesiyan also submitted declarations, but even those offer nothing to suggest that additional potential collective members want to join, much less a meaningful percentage of the total possible group.

conclude that Plaintiffs have personal knowledge about the relevant duties of thousands of Publix Associates in seven different states.  It includes no statement that its contents are based on the signatory's personal knowledge.  (*See* Docs. 9-1 to 9-7).  It doesn't even go so far as to state that the declarants "believe" their assertions to be the case.  Instead, the declaration trundles along, assertion after assertion, declarant after declarant, ignorant of its inadequacy.  On that basis alone, the declaration, no matter how many people sign it, cannot support conditional certification.  *See Brooks v. BellSouth Telecomms., Inc.*, No. 1:07-CV-3054-ODE, 2009 WL 10699685, at *6 (N.D. Ga. Feb. 10, 2009) ("Even courts taking [a] more 'relaxed' approach [to evidentiary standards at the conditional certification stage] have required that affidavits or declarations be based on the affiant's or declarant's personal knowledge.").[7]

The portions of the declarations that even arguably rest on personal knowledge do nothing to support the similarity § 216(b) requires.  Several paragraphs relate only to each plaintiff's alleged hours worked and pay allegedly foregone. *See, e.g.,* Doc. 9-1 at ¶ 20).  Even if true,  those facts are, by definition,

---

[7]  At a minimum, paragraphs 6-7, the last two sentences of paragraph 8, the first sentence of paragraph 9, paragraph 10, the first sentence of paragraph 16, and paragraph 22 should not be considered because they are not based on Plaintiffs' personal knowledge. Paragraphs 22 and 23 should also be disregarded because they contain nothing but legal conclusions. (*See, e.g.*, Doc. 9-1).

unique to each plaintiff. Others relate to Publix's March 2019 reclassification of department managers from exempt to non-exempt. Reclassification, however, cannot alone undergird conditional certification. *See Henry v. Express Scripts Holding Co.*, No. 14-2979, 2015 WL 790581, at *1 (D.N.J. Feb. 24, 2015) ("Reclassification, alone, does not evidence a FLSA violation."); *see, e.g.*, Doc. 9-1 at ¶¶ 9, 23. Still others speak to job duties for positions other than those the declarant held. (*See, e.g.*, Doc. 9-1 at ¶ 8 (a former Bakery Manager claiming to be familiar with the duties of a Deli Manager)). Even considered as a whole, the declaration simply says seven times that Publix is bad, Bakery and Deli Managers work production more than they manage, and that those same managers received the same training. (*See generally* Docs. 9-1 through 9-7). Even if true (most are not), none of those facts establish similarity that justifies collective proceedings.

### D. Plaintiffs Fail to Show a Common and Unlawful Policy or Plan That Binds the Proposed Collective

Plaintiffs bear the burden of showing that they and their proposed collective suffered under a common policy or plan that violates the FLSA. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). Their failure to do so, like their failures to show meaningful interest in this case and substantial similarity to the proposed collective, counsels denying conditional certification.

The focus in an exempt misclassification lawsuit like this case must be on "actual job duties of those in that job category to determine whether they are similarly situated." *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 518 (4th Cir. 2011) (citation omitted); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (reasoning that mere existence of common exempt designation is insufficient to show that employees are similarly situated).  Merely being classified as exempt does not violate the FLSA and, thus, cannot bind a collective.  Indeed, the FLSA contains several relevant exemptions that, if applicable, themselves justify company-wide classification schemes.  *See* 29 U.S.C. § 213(a)(1).  There must be something more, and that something more must be unlawful *and* common to the entire proposed collective.

Plaintiffs' failure to aggregate more than seven or so voices creates problems here yet again.  Because they only offer testimony from, at best, three percent of their proposed collective, it is "difficult if not impracticable" to determine if the required similarity exists or if a common plan or policy affected more than eight people.  *Saxton v. Title Max of Ala., Inc.*, 431 F. Supp. 2d 1185, 1188 (N.D. Ala. 2006).  Put another way, nothing in Plaintiffs' declarations suggests that their speculation about putative collective members at stores beyond those Plaintiffs worked at should be afforded any weight.  Publix's declarations, discussed in more detail

below, strongly suggest that Plaintiffs' experiences may have been unusual.  In any event, because it's Plaintiffs' burden to make the similarity showing, their failure to show interest in joining this case undermines their wafer-thin effort to show similarity.  *Id.*

### E.    Bakery Department Managers Are Distinct From One Another, Deli Department Managers Are Distinct From One Another, And The Two Positions Are Different Roles

All Bakery and Deli Department Managers were, during the relevant time period, empowered by Publix to independently manage their departments of subordinate employees.  (*See, e.g.* Ovcina Decl. at ¶ 17; Humphries Decl. at ¶¶ 16-23).  That similarity of independence, however, does not spawn the similarity that justifies collective proceedings.  Both intra and inter-positional differences existed.  Those differences make conditional certification inappropriate in this case.

#### 1.    *Bakery Department Managers are not similarly situated to one another*

Like all department managers, Bakery Department Managers' jobs differed from store to store based on several factors.  High volume stores necessarily had more employees, including in the Bakery Department.  (*See* Decl. of Deidre Harris at ¶¶ 4-5, attached as Ex. G).  More employees meant more time spent managing Associates, whether that was coaching their performance, scheduling their hours, conducting first tier interviews of new hires, or disciplining Associates when

appropriate.  (Harris Decl. at ¶ 10; Humphries Decl. at ¶¶ 11, 14; Decl. of Dave Tawney at ¶ 7, attached as Ex. H (sales volume variance and number of associates managed "can directly impact how an individual Department Manager manages his or her department")).  Larger work forces also led to greater Associate specialization, which itself required that Associates "be managed differently." (Tawney Decl. at ¶ 9).  Further, volume differences influenced customer interactions—the more volume, the more interaction.  (Humphries Decl. at ¶ 11). Bakery Managers faced with greater customer numbers managed their Associates differently (e.g., focusing more on customer service training) than managers at slower stores who could devote more time to display planning, decorator training, and operational efficiencies.  (Humphries Decl. at ¶ 11).

Store locations also differentiated Bakery Managers.  Location, and the associated customer demographics, influenced product selection at a given store, which led to different inventory requirements for managers.  (Switzer Decl. at ¶ 10).  Location-based clientele differences also created different customer demands, which created different duties for customers.  Upscale location customers, for instance, required more time and demanded more than other areas.  (Switzer Decl. at ¶ 10).

The tenure and experience of Associates constituted another Bakery Manager differentiator.  (Humphries Decl. at ¶ 12).  More experienced Associates needed less training and coaching, while greener bakers and decorators required more managerial time and, "in some instances," more discipline.  (Humphries Decl. at ¶ 12).  In other words, a Bakery Manager at a high volume store with a large team of rookies had radically different job duties than a Bakery Manager at a smaller store with more experienced team members.  The former thus was not similarly situated to the latter.

2.   *Deli Department Managers Are Not Similarly Situated to One Another*

Like their Bakery Department counterparts, Deli Department Managers were not similarly situated to each other.  The same factors that caused Bakeries to differ from store to store also changed Deli Managers' jobs.  (*See* Decl. of Daniel Gueguen at ¶ 5, attached as Ex. I).  The same managerial tasks that increased in the Bakery with more associates also increased in the Deli.  (Decl. of Allison McLeod at ¶¶ 2, 5, 7, attached as Ex. J).  Like Bakery Department Managers, Deli Department Managers were not similarly situated to each other.

3.  *Bakery Department Managers Are Not Similarly Situated to Deli Department Managers*

Just as differences existed within Deli and Bakery Department Manager cohorts, so did they exist between the Deli and Bakery. Those differences began with the products each presents to Publix customers. Deli Departments sold meats and hot cooked food, while bakeries unsurprisingly sold baked goods. (McGee Decl. ¶¶ 7, 10). Those different products in turn led to different customer purchase patterns (Delis are far busier than Bakeries), different amounts of customer interaction, different production needs, and different managerial processes, oversight, and ordering requirements. (Humphries Decl. at ¶ 14).

Those differences spawned other, different, requirements of managers. Deli Department Managers had more tasks to complete than Bakery Managers and spent more time addressing customer demands. (McGee Decl. at ¶ 11). Delis, because of their greater sales volume, also required their managers to spend more time managing inventory than did Bakeries. (Tawney Decl. at ¶ 7).

Bakeries' different production needs, and their smaller work forces, likewise differentiated their managers from Deli Department Managers. In the Deli, managers spent more time training customer service, as well as safety protocols imposed by various state and local health departments. (McGee Decl. at ¶ 9).

Bakery Managers, on the other hand, spent more time "overseeing meticulous and involved processes."  (Humphries Decl. at ¶ 15).

At bottom, it is a matter of common sense, confirmed by Publix's evidence, that a Bakery Department Manager performs different duties than a Deli Department Manager.  Associates in one role should not be lumped into a collective with Associates in the other, as those in one are not similarly situated to those in the other with respect to the duties that they perform.  Indeed, "[n]o two managers are going to do things the same way."  (Hernandez Decl. at ¶ 16). Conditional certification of Plaintiffs' proposed collective thus is inappropriate.

### F. Publix Objects to the Notice, its Contents, and the Notice Distribution Process That Plaintiff Proposes

With the Motion, Plaintiffs propose a draft notice they would like to send to their proposed collective.  Plaintiffs ask this Court to require that Publix produce to them, for each putative collective member: name, job title, address, email address, telephone number, dates of employment, location of employment, date of birth, and the last four digits of their Social Security numbers.  They propose to use that information to solicit involvement in this case.

Problems abound with what Plaintiffs propose.  Publix objects to, among other things, the vague substance of the notice, the confusion it would cause as

drafted, and the means by which Plaintiffs would distribute the notice, namely by email rather than simply by the preferred method of U.S. Mail.  Publix also objects to Plaintiffs harassing potential class members, without restriction, by email, calls to their homes, calls to their cell phones, and perhaps other means.  To resolve these objections, Publix requests that, in the event this Court conditionally certifies an FLSA collective of any scope, the parties be given twenty-one days to confer about and present, if possible, a jointly proposed notice and notice distribution process, after which appropriately limited contact information for the class that this Court defines would be due for exchange within thirty days.

## III.   CONCLUSION

For these reasons—particularly because this Court lacks personal jurisdiction over Publix as to the claims of about 85% of the proposed collective members—Plaintiffs' Motion for Conditional Certification should be denied.  If the Court grants the Motion, Publix asks the Court to direct the parties to confer and submit a joint proposed notice and consent form.

Date: December 20, 2019          Respectfully submitted,

SEYFARTH SHAW LLP

By s/ Brett C. Bartlett
    Brett C. Bartlett
    Georgia Bar No. 040510
    Lennon B. Haas
    Georgia Bar No. 158533
    SEYFARTH SHAW LLP
    1075 Peachtree St. NE, Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    bbartlett@seyfarth.com
    lhaas@seyfarth.com

    COUNSEL FOR DEFENDANT PUBLIX SUPER MARKETS, INC.

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| TAKIA WALTON, DANYLLE MCHARDY, GEORGE DE LA PAZ JR., KEVIN JACOBS, and FEIONA DUPREE, Individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) | CIVIL ACTION FILE NO. 1:19-CV-4466-LMM |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PUBLIX SUPER MARKETS, INC., | ) ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I certify that on December 20, 2019, I electronically filed DEFENDANT'S RESPONSE IN OPPOSITION TO  PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION using the CM/ECF system, which will automatically send email notification of this filing to all counsel of record.

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this response in opposition to Plaintiffs' motion for conditional certification has been prepared in Book Antiqua 13-point font as approved by Local Rule 5.1(B).

s/ Brett C. Bartlett
Counsel for Defendant