# Exhibit A

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix") and Danylle McHardy ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

## RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

## AGREEMENT

1. **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.  The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2. **Court Approval of Settlement**

A. **Motion for Approval**. The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice. The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B. **Cooperation and Mutual Pursuit of Approval**. If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3. **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4. **Consideration Paid by Publix**

A. **Payment to Plaintiff.** In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $14,275.99.

B. **Attorney's Fees.** In addition to the payment outlined in Section A above, Defendants will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs. The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs. This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses. If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C. **Funding Date**. Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D. **Tax Treatment**. Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099). Publix's

share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.    **No Effect on Benefits Owed**

This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.    **Covenant Not to Sue**

Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement. Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement. If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7.    **No Retaliation**

Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.    **No Confidentiality, Publicity Limits**

Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of the Settlement Agreement prior to a Court approval order. After Court approval,

Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9.   **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such party, notwithstanding such failure, shall have the right thereafter

4

to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14. **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15. **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16. **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument. Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17. **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement by my signature below.

**Danylle McHardy**
Dated: 06/18/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name: Merriann M. Metz

Title:  General Counsel

Date:   7/1/21

6

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix") and Takia Walton ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

## RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

## AGREEMENT

1. **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.  The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2. **Court Approval of Settlement**

A.     **Motion for Approval**.  The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.  The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B.     **Cooperation and Mutual Pursuit of Approval**.  If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq.  The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3.     **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4.     **Consideration Paid by Publix**

A.     **Payment to Plaintiff**.  In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $17,705.55.

B.     **Attorney's Fees.**  In addition to the payment outlined in Section A above, Defendants will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs.  The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs. This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses.  If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C.     **Funding Date**.  Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D.     **Tax Treatment**.  Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099).  Publix's

2

share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.    **No Effect on Benefits Owed**

This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.    **Covenant Not to Sue**

Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement. Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement. If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7.    **No Retaliation**

Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.    **No Confidentiality, Publicity Limits**

Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of the Settlement Agreement prior to a Court approval order. After Court approval,

3

Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9.    **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.   Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement

4

Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14.    **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15.    **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16.    **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice.  The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument.  Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17.    **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement by my signature below.

**Takia Walton**
Date: 06/18/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name:  Merriann M. Metz

Title:  General Counsel

Date:  7/1/21

6

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix"), and Michael Adesiyan ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

## RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

## AGREEMENT

1.   **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.  The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2.   **Court Approval of Settlement**

A. **Motion for Approval**. The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice. The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B. **Cooperation and Mutual Pursuit of Approval**. If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3. **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4. **Consideration Paid by Publix**

A. **Payment to Plaintiff.** In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $15,430.07.

B. **Attorney's Fees.** In addition to the payment outlined in Section A above, Defendants will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs. The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs. This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses. If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C. **Funding Date**. Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D. **Tax Treatment**. Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099). Publix's

share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.     **No Effect on Benefits Owed**

This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.     **Covenant Not to Sue**

Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement. Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement. If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7.     **No Retaliation**

Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.     **No Confidentiality, Publicity Limits**

Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of the Settlement Agreement prior to a Court approval order. After Court approval,

3

Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9. **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10. **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11. **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12. **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13. **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement

4

Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14.    **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15.    **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16.    **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument. Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17.    **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

5

I read and fully understood the foregoing settlement agreement and release of claims before signing this agreement.

**Michael Adesiyan**
Date: 06/18/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name: Merriann M. Metz

Title: General Counsel

Date: 7/1/21

6

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix"), and Kevin Jacobs ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

## RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

## AGREEMENT

1.   **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.   The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2.   **Court Approval of Settlement**

A.    **Motion for Approval**.  The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.  The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B.    **Cooperation and Mutual Pursuit of Approval**.  If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq.  The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3.    **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4.    **Consideration Paid by Publix**

A.    **Payment to Plaintiff.**  In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $16,441.00.

B.    **Attorney's Fees.**  In addition to the payment outlined in Section A above, Defendants will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs.  The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs.  This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses.  If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C.    **Funding Date.**  Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D.    **Tax Treatment.**  Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099).  Publix's

2

share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5. **No Effect on Benefits Owed**

This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6. **Covenant Not to Sue**

Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement. Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement. If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7. **No Retaliation**

Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8. **No Confidentiality, Publicity Limits**

Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of

the Settlement Agreement prior to a Court approval order. After Court approval, Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9.    **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement

4

Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14.    **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15.    **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16.    **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument. Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17.    **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

5

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement by my signature below.

**Kevin Jacobs**
**Dated**   06/18/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name:   Merriann M. Metz

Title:  General Counsel

Date:       7/1/21

6

**SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS**

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix"), and Kristie McNair ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

## RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

## AGREEMENT

1. **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.  The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2. **Court Approval of Settlement**

A. **Motion for Approval**. The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice. The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B. **Cooperation and Mutual Pursuit of Approval**. If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3. **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4. **Consideration Paid by Publix**

A. **Payment to Plaintiff.** In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $12,412.50.

B. **Attorney's Fees.** In addition to the payment outlined in Section A above, Defendants will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs. The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs. This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses. If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C. **Funding Date.** Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D. **Tax Treatment.** Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099). Publix's

share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.     **No Effect on Benefits Owed**

This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.     **Covenant Not to Sue**

Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement. Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement. If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7.     **No Retaliation**

Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.     **No Confidentiality, Publicity Limits**

Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of

the Settlement Agreement prior to a Court approval order. After Court approval, Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9.   **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to

4

any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14.  **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15.  **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter.  All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16.  **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice.  The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument.  Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17.  **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

5

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement by my signature below.

I read and fully understood the foregoing settlement agreement and release of claims before signing this agreement.

_____

**Kristie McNair**
Dated: 06/21/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

_____
Signature

Name:_____Merriann M. Metz_____

Title:  General Counsel

Date:_____7/1/21_____

6

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix"), and Feiona Dupee ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

### RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

### AGREEMENT

1.   **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.  The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2.   **Court Approval of Settlement**

A.  **Motion for Approval.**  The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.  The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B.  **Cooperation and Mutual Pursuit of Approval.**  If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq.  The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3.  **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4.  **Consideration Paid by Publix**

A.  **Payment to Plaintiff.**  In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $8,010.90.

B.  **Attorney's Fees.**  In addition to the payment outlined in Section A above, Defendant will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs.  The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs. This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses.  If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C.  **Funding Date.**  Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D.  **Tax Treatment.**  Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for

disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099). Publix's share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.     **No Effect on Benefits Owed**

        This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.     **Covenant Not to Sue**

        Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

        Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

        Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement. Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement. If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.


7.     **No Retaliation**

        Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.     **No Confidentiality, Publicity Limits**

        Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of

the Settlement Agreement prior to a Court approval order.   After Court approval, Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement.  Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total.  Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

## 9.   **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

## 10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

## 11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

## 12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

## 13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.   Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement

4

shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14.   **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15.   **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16.   **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument. Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17.   **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

5

I read and fully understood the foregoing settlement agreement and release of claims before signing this agreement.

**Feiona Dupree**
Dated: 06/21/2021


I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name: Merriann M. Metz

Title: General Counsel

Date: 7/1/21

6

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix"), and George De La Paz Jr. ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

## RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

## AGREEMENT

1.   **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.  The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2.   **Court Approval of Settlement**

A.  **Motion for Approval**.  The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.  The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B.  **Cooperation and Mutual Pursuit of Approval**.  If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq.  The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3.  **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4.  **Consideration Paid by Publix**

A.  **Payment to Plaintiff.**  In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $10,320.69.

B.  **Attorney's Fees.**  In addition to the payment outlined in Section A above, Defendants will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs.  The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs.  This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses.  If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C.  **Funding Date.**  Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D.  **Tax Treatment**.  Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099).  Publix's

share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.    **No Effect on Benefits Owed**

This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan.  Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.    **Covenant Not to Sue**

Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement.  Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement.  If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7.    **No Retaliation**

Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.    **No Confidentiality, Publicity Limits**

Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of the Settlement Agreement prior to a Court approval order.   After Court approval,

Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9.    **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement

4

Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14. **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15. **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16. **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument. Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17. **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement by my signature below.

**George De La Paz Jr.**
Dated: 06/21/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name: Merriann M. Metz

Title: General Counsel

Date: 7 / 1 / 21

6