# Exhibit D

## GENERAL RELEASE AGREEMENT

This General Release Agreement ("General Release") is entered into by Publix Super Markets, Inc. ("Publix"), and Michael Adesiyan ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit"), as memorialized in a separate FLSA Settlement Agreement ("FLSA Agreement"), and hereby agree to settle any other claims not alleged in the Lawsuit by this General Release.

## AGREEMENT

1. **No Admission of Liability**

   By agreeing to this General Release, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.

2. **Consideration**

   a. Plaintiff will receive from Publix payment of $1,500 in exchange for which Plaintiff gives the release specified below in Section 3 and agreement to be bound by the other promises and provisions contained in this General Release.

   b. One-half of the gross amounts paid to Plaintiff will be paid by payroll check for any (disputed) compensation or compensatory damages claim for wages to Plaintiff, subject to deduction for taxes and withholdings, and with Publix's payment of usual and customary employer payroll taxes, reported as to the IRS and Plaintiff by IRS Form W-2. The other half will be paid for any (disputed) non-wage claim for interest, penalties, or liquidated damages, without deduction for taxes and withholdings, reported to the IRS and Plaintiff by IRS Form 1099.

   c. Publix shall remit the amounts to be paid under this General Release to Plaintiff's counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

3. **Waiver and Release of Non-FLSA Employment Claims**

   a. Plaintiffs, for themselves and their spouses, heirs, attorneys, executors, administrators, representatives, successors and assigns, release and forever discharge Publix, its predecessors, former and current parents and subsidiaries and related and affiliated companies, and their respective past and present employees, owners, directors, officers, agents, shareholders, investors, members, insurers, attorneys, executors, assigns, and other representatives of any kind, whether or not acting in their official capacity, and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties") from all, liability, claims, damages, attorney's fees, costs and expenses, and causes of action for all non-FLSA and non-wage and hour

labor and employment claims related to or arising out of each Plaintiff's application for employment, employment with or employment relationship to the Released Parties, the cessation of that employment, the compensation payable in connection with that employment or the cessation of that employment, that arose or are arising or accruing because of Plaintiffs' employment by Publix through and including the date on which the Court approves the FLSA Settlement in the Lawsuit; except that the Lawsuit did not involve and does not affect employee benefits owed, payments of these settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any proceeds disbursed to Plaintiffs under this Release. Plaintiffs hereby specifically waive and release any claim, demand, action, or cause of action, including claims for attorneys' fees, costs and expenses of any kind based on but not limited to any claim under any federal, state or governmental constitution, statute, regulation or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(2); the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*; the Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; the Lilly Ledbetter Fair Pay Act of 2009; the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, *et seq.*; the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681, *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*; the Georgia Age Discrimination in Employment Act, Ga. Code Ann. § 34-1-2; the Georgia Equal Employment for Persons with Disabilities Code, Ga. Code Ann. § 34-6A-2; the Georgia Sex Discrimination in Employment Act, Ga. Code Ann. § 34-5-1, *et seq.*; the Constitutions of each state or commonwealth of Plaintiff's work location on her last date of employment. Plaintiffs further specifically waive and release any claim arising out of or related to their employment with Publix under common law or statutory torts, any claim for breach of an agreement or covenant, oral or written, express or implied, between Plaintiffs and the Released Parties, or any claim for breach of any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); any claim under any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing. Nothing in the General Release shall be intended to limit or restrict any rights the Released Parties may have to enforce the General Release or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished.

Notwithstanding the foregoing, nothing in this General Release Agreement prohibits or prevents the Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding

before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor limits any Plaintiff from exercising his or her rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees.  However, to the maximum extent permitted by law, the Plaintiffs agree that if such an administrative claim is made in any charge, complaint, lawsuit or other proceeding brought by any Plaintiff or on any Plaintiff's behalf by any third party, they shall not be entitled to recover any individual monetary relief or other individual remedies from the Released Parties on the Released Claims, except for any right Plaintiffs may have to receive a payment or award from a government agency (and not the Released Parties) for information provided to a government agency.

4. **Plaintiffs' ADEA Waiver and Acknowledgements**

a.     Plaintiff knowingly and voluntarily waives any rights and claims under the Federal Age Discrimination in Employment Act of 1967, as amended, the Older Workers Benefit Protection Act of 1990, as amended, 29 U.S.C. § 621 *et seq.* (together, the "ADEA"), and under the other statutes and laws set forth in Section 2(a), above. However, Plaintiff acknowledges and understands that he or she is not waiving any claims for age discrimination under the ADEA that may arise after the date he or she signs this General Release, and he or she is not waiving any vested benefits, if any.

b.     Plaintiff confirms that he or she has been given at least twenty-one (21) calendar days to consider this General Release, which time is sufficient and satisfies any notification requirements that may exist. Plaintiff is and has been advised to consult with an attorney before executing this General Release and by signing this General Release Plaintiff confirms that he or she has had a fair and full opportunity to do so and that Plaintiff, indeed, consulted with an attorney prior to executing this General Release.

c.     Plaintiff has entered into this General Release knowingly and voluntarily with full understanding of its terms and after having had the opportunity to seek and receive advice and counsel from Plaintiff's Counsel.

d.     Plaintiff may revoke his or her acceptance of this General Release within seven (7) calendar days after he or she signs it. Revocation is effective only by providing written notice to Publix's lead counsel of record in the Lawsuit.

e.     If Plaintiff revokes his or her acceptance of this General Release within the seven (7) day revocation period under subsection (d) above, this General Release will be null and void and Plaintiff will not receive any payment or other consideration related to this General Release.

5. **No Obligation**

Plaintiff agrees that absent his or her entry into this General Release, he or she is not presently entitled to the consideration set forth in this Agreement, or any component thereof, under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any

Plaintiff or Publix. The payments and other consideration to be provided Plaintiff under this General Release are solely in exchange for his or her promises and affirmations in the General Release, including his or her waiver and release of claims herein, and represent amounts and/or other consideration in excess of any amounts to which he or she is otherwise entitled under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any Plaintiff or Publix.

6. **No Other Claims**

With the exception of the Lawsuit, Plaintiff represents that he or she has not filed, lodged, claimed, or asserted any charge, complaint, claim, causes of action, debt, sum of money, controversy agreement, promise, or damages of any sort, including any such action alleging any failure to provide any wages, compensation, or reimbursements allegedly due or seeking penalties or recovery of any sort based on any such alleged failure against Publix, and/or to the best of their knowledge against the Released Parties with any state, federal or local agency or court. Plaintiff further represents that he or she has not assigned to others their right to file, nor to the best of their knowledge are there currently pending, any complaints or lawsuits against the Released Parties with any court other than the Lawsuit, and that they will not file, or assign to others their right to file, or make any further claims against the Released Parties at any time for the Released Claims herein. Each signatory hereby warrants and represents that he or she or it has authority to bind the party or parties for whom such signatory acts, even those who are not signatories hereto, and further warrant and represents that the claims, suits, rights, and/or interests which are the subject matter of this litigation are owned by the party asserting same and have not been assigned, pledged, transferred or sold, except in connection with any fee agreement that such party has entered into with him or her or its counsel of record. Plaintiff understands and agrees that if any class or other action is brought by a third party with regard to the Released Claims released in this General Release, Plaintiff will not accept any payments or monetary relief relating to any such claims or causes of action. Further, Plaintiff affirms that he or she has been paid, or will have been paid once he or she receives all agreed amounts under the settlement of the Lawsuit compromising their overtime claims, all leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits to which they may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits are due to them.

7. **Tax Indemnity**

Plaintiff acknowledges and agree that Publix has made no representations regarding the tax consequences of any amounts received pursuant to this General Release and agrees to pay all federal and state taxes which are required by law to be paid by them with respect to employee's share of taxes owed on the settlement proceeds. Plaintiff agrees that, in the event that any tax, penalty or liability of any kind is assessed against or incurred by Publix by reason of the payments described in Section 1 (except any liability assessed solely because of Publix's failure to pay the amounts

4

due in Section 1), Plaintiff will fully and completely indemnify and hold harmless Publix (and any of the Released Parties) from any liability, claim, judgment, attorneys' fees, expenses, and costs incurred by any Released Party in connection with the tax treatment of any of the payments and/or the method utilized to make any of the payments in Section 1.

8. **Court Approval**

The terms of this General Release are contingent upon Court approval of the settlement in the Lawsuit, which includes non-rejection of this General Release. If the Court in the Lawsuit rejects the Plaintiff's General Release and/or its payments, the FLSA Settlement agreement survives and the rejected amounts from the General Release will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court. If the Court in the Lawsuit reduces the General Release payments, the FLSA Settlement and the releases given in this General Release survive, and the rejected amount from the General Releases will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court.

9. **Counterparts and Electronic Signatures**

This General Release may be executed in counterparts, each of which shall be deemed to be an original executed agreement and which together shall be deemed to be one and the same instrument. An electronic signature, or facsimile or copy of a signature, shall be treated as an original signature for all purposes.

10. **Knowing and Voluntary Waiver**

The Parties acknowledge and agree they had sufficient time to consider this General Release and consult with legal counsel of their choosing concerning its meaning. When entering into this General Release, the Parties have not relied on any representations or warranties made by the Parties, other than representations and warranties expressly set forth in this General Release.

11. **Choice of Law**

The enforcement of this General Release shall be governed and interpreted by, and under, the laws of the State of Georgia without giving effect to the principles of conflicts of laws thereof regardless of whether any party is, or may hereafter be, a resident of another state.

12. **General Release Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this General Release will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties. If the Court rejects the FLSA Settlement in whole or in part due

to this General Release, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval of the FLSA Settlement again.

### 13. **Amendments/Modifications**

No modification, or amendment of the terms of this General Release by any Party shall be valid or binding unless in writing, signed by all of the Parties.

### 14. **Binding Agreement**

This General Release shall be binding upon, and inure to the benefit of, the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

### 15. **Non-Disparagement**

Plaintiffs agree that they will not make any negative, disparaging, libelous, slanderous, or defamatory statements about Publix or its products, services, or business and employment practices, regardless of the truth or falsity of such statements to anyone including, but not limited to, Publix's customers, vendors, suppliers, employees, and/or competitors.  For purposes of this Paragraph, "Publix" includes Publix's employees, officers, directors, shareholders, executives, agents, attorneys, and any affiliated or related organizations.

### 16. **No Re-hire**

Plaintiffs not currently employed by Publix agree that Publix has no duty to reemploy or rehire Employee in any capacity at any time.  Plaintiffs not currently employed by Publix further agree not to seek or accept future employment with Publix in any position or capacity and waives any and all rights to be rehired, reemployed, or reinstated by Publix.

### 17. **No Third-Party Beneficiaries**

The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this General Release, that the Parties have the sole right and exclusive authority to execute this General Release, and that none of the Parties have sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, or legal right that is the subject of this General Release. This General Release shall not be construed to create rights in, grant remedies to, or

6

delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of this General Release.

18. **Entire Agreement**

      This General Release constitutes the entire agreement of the Parties concerning the subjects addressed by the release herein, but not as to subjects not addressed by the release including (and without affecting) the FLSA Settlement.

19. **Captions**

      The captions or headings of the sections and paragraphs of this General Release have been inserted for convenience only, and shall have no effect on the construction or interpretation of any part of this General Release.

20. **Interpretation**

      The language of all parts of this General Release shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

21. **Effective Date**

      This General Release shall become effective upon the entry of the Court's final ruling approving the FLSA Settlement in this Lawsuit.

22. **Signatories**

      Each person executing this General Release, including execution on behalf of the corporate defendant, warrants and represents that such person has the authority to do so.

By: _____
    Michael Adesiyan
    Dated: 06/18/2021

By: _____
    Publix Super Markets, Inc.
    Dated: 6/29/21

7

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix"), and George De La Paz Jr. ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

### RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

### AGREEMENT

1. **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing. The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2. **Court Approval of Settlement**

A.     **Motion for Approval**.  The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.  The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B.     **Cooperation and Mutual Pursuit of Approval**.  If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq.  The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3.     <u>**Releases of Claims**</u>

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4.     <u>**Consideration Paid by Publix**</u>

A.     **Payment to Plaintiff.**  In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $10,320.69.

B.     **Attorney's Fees.**  In addition to the payment outlined in Section A above, Defendants will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs.  The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs.  This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses.  If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C.     **Funding Date**.  Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D.     **Tax Treatment**.  Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099).  Publix's

share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.   **No Effect on Benefits Owed**

This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan.  Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.   **Covenant Not to Sue**

Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement.  Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement.  If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7.   **No Retaliation**

Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.   **No Confidentiality, Publicity Limits**

Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of the Settlement Agreement prior to a Court approval order.   After Court approval,

Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9.    **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement

4

Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14.   **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15.   **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16.   **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument. Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17.   **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement by my signature below.

**George De La Paz Jr.**

Dated: 06/21/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name: Merriann M. Metz

Title: General Counsel

Date: 6/29/21

6

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims ("Settlement Agreement") is entered into by Publix Super Markets, Inc. ("Publix"), and Feiona Dupee ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit").

### RECITALS

WHEREAS, the Plaintiffs filed the Lawsuit under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on October 3, 2019;

WHEREAS, in the Lawsuit, the Plaintiffs assert claims that they were misclassified as exempt from the FLSA's overtime provisions;

WHEREAS, Publix disputes all of the claims and material allegations made by the Plaintiffs and maintains that it properly classified all Plaintiffs as exempt from overtime requirements;

WHEREAS, the Parties mediated the Lawsuit on April 23, 2021 via Zoom, and, after a full day mediation, arrived at agreed upon terms to settle the claims in the Lawsuit;

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through litigation would incur substantial additional risk, discovery, time, and expense;

WHEREAS, Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of all Plaintiffs; and

WHEREAS, Plaintiffs and Publix believe that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit;

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

### AGREEMENT

1. **No Admission of Liability**

By agreeing to this Settlement Agreement, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.  The Parties also agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated people exist to maintain a collective action under the FLSA.

2. **Court Approval of Settlement**

A.     **Motion for Approval**.   The Settlement Agreement is contingent upon Court approval and entry of stipulated judgment incorporating the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.  The Parties agree to jointly file a Motion for Entry of Stipulated Judgment Approving FLSA Settlement with the Court, to be accompanied by a proposed stipulated Judgment incorporating the Settlement Agreement terms and dismissing the Lawsuit with prejudice, within three court days of full execution of this Settlement Agreement and the Parties' agreement on the contents of the Joint Motion.

B.     **Cooperation and Mutual Pursuit of Approval**.  If the Court rejects the Settlement Agreement in whole or in part, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq.  The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval again.

3.     **Releases of Claims**

All Plaintiffs agree to release any and all FLSA and state law wage and hour claims that arose or could have arisen because of Plaintiffs' employment by Publix through and including April 1, 2019.

4.     **Consideration Paid by Publix**

A.     **Payment to Plaintiff.**  In consideration for the entry of stipulated judgment incorporating this Settlement Agreement and dismissing this Lawsuit with prejudice, Publix will pay to Plaintiff $8,010.90.

B.     **Attorney's Fees.**  In addition to the payment outlined in Section A above, Defendant will pay to Plaintiffs' counsel the amount of $13,414.71 for attorneys' fees and costs.  The amount of attorneys' fees and costs were negotiated apart from, and subsequent to, agreement on the amount of settlement funds to be paid to Plaintiffs. This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsels' request for approval of attorneys' fees, costs, and expenses.  If the Court rejects Plaintiffs' Counsels' request for approval of the agreed upon attorney's fees, the Settlement Agreement shall survive and the portion of requested fees un-awarded shall be redistributed to the Plaintiffs on a pro rata basis using the allocations set forth in the Award Calculation section above.

C.     **Funding Date**.  Publix shall remit the Fund to Plaintiffs' counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

D.     **Tax Treatment**.  Each Plaintiff's settlement payment from the Fund shall be allocated as 50% wages (reported by W-2) and 50% as non-wage compensation for

disputed FLSA liquidated damages alleged in the Lawsuit (reported by 1099). Publix's share of payroll taxes shall be deducted from the individual settlement payment allocated to each Plaintiff in an amount determined by Publix.

5.    **No Effect on Benefits Owed**

        This Lawsuit did not involve and does not affect employee benefits owed. Payments of settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any settlement proceeds disbursed to Plaintiffs.

6.    **Covenant Not to Sue**

        Plaintiffs agree not to assert any claims released in this Settlement Agreement by suing or joining suit against Publix in any individual, class, or collective action.

        Nothing in this Settlement Agreement prohibits Plaintiffs from suing Publix, or Publix from suing settling Plaintiffs, to enforce the terms of this Settlement Agreement. In the event of a breach of this Settlement Agreement, the non-breaching party may sue for an injunction, specific performance, and/or monetary damages resulting from such breach, as well as reasonable attorney's fees and costs related to the breach of contract lawsuit.

        Plaintiffs acknowledge and agree that this Covenant Not to Sue is an essential and material term of this Settlement Agreement without which the Parties could not have reached a settlement. Plaintiffs further acknowledge and agree that a breach of this Section is a material breach of this Settlement Agreement. If any Plaintiff breaches this Covenant Not to Sue, Publix will have the right to sue that breaching Plaintiff for an injunction, specific performance, and/or monetary damages resulting from any such breach, as well as reasonable attorney's fees and costs related to the breach of contract suit.

7.    **No Retaliation**

        Consistent with its legal obligations, Publix will not retaliate against any Plaintiff based on his or her decision to participate or not to participate in this Action and/or the Settlement.

8.    **No Confidentiality, Publicity Limits**

        Although Plaintiffs' confidentiality is not a term of this Settlement Agreement, Plaintiffs and Plaintiffs' counsel agree that they will not publicize in any way the fact of

the Settlement Agreement prior to a Court approval order. After Court approval, Plaintiffs' counsel may note that the case resolved on their website(s), but such website(s) may not state, otherwise describe, or link to any matter or materials describing the amounts of the Settlement. Plaintiffs' counsels' law firm website(s) may only include the settlement amounts in an aggregate "total amounts recovered by law firm" statement if that statement does not identify this settlement, or Publix as the payor of this settlement, as a source of or contributor to that aggregate total. Plaintiffs may not advertise or publicize through news media or media outlets the results of the case, other than to say the parties resolved it satisfactorily.

Publix shall have discretion to communicate accurate information as it sees fit with settlement participants, employees, and the press about its reasons for settling and any related matters.

9.    **Continuing Jurisdiction**

The Parties agree to request that the United States District Court for the Northern District of Georgia retain continuing and exclusive jurisdiction over enforcing the Settlement Agreement.

10.   **Settlement Agreement Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this Settlement Agreement will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties.

11.   **Choice of Law**

The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Georgia whether or not any party is, or may hereafter be, a resident of another state.

12.   **Extensions of Time**

The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

13.   **No Waivers, Modifications, or Amendments of the Settlement Agreement**

No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement

4

shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

14.   **Severability**

This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

15.   **Entire Agreement**

This Settlement Agreement constitutes the entire agreement of Publix and Plaintiffs concerning its subject matter. All prior and contemporaneous negotiations and understandings between Publix and Plaintiffs are deemed merged into this Settlement Agreement, with the exception that this Settlement Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Publix and any Plaintiff regarding payment for all or part of any claims released herein.

16.   **Counterparts**

This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval and entry of stipulated judgment dismissing the Lawsuit with prejudice. The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Plaintiffs and Publix had signed the same instrument. Any signature or e-signature made by the signing party and transmitted by facsimile, email, or electronic signature (via DocuSign, SignNow, or similar e-signing service) to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

17.   **Corporate Signatories**

Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval. Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

*[Signature Page Follows]*

5

I read and fully understood the foregoing settlement agreement and release of claims before signing this agreement.

**Feiona Dupree**
Dated: 06/21/2021

I read and fully understood the foregoing settlement agreement and release of claims before accepting this agreement on behalf of the corporate entity by my signature below.

FOR PUBLIX SUPER MARKETS, INC.

Signature

Name: Merriann M. Metz

Title: General Counsel

Date: 6/29/21

6

## GENERAL RELEASE AGREEMENT

This General Release Agreement ("General Release") is entered into by Publix Super Markets, Inc. ("Publix"), and Kevin Jacobs ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit"), as memorialized in a separate FLSA Settlement Agreement ("FLSA Agreement"), and hereby agree to settle any other claims not alleged in the Lawsuit by this General Release.

### AGREEMENT

1. **No Admission of Liability**

   By agreeing to this General Release, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.

2. **Consideration**

   a. Plaintiff will receive from Publix payment of $1,500 in exchange for which Plaintiff gives the release specified below in Section 3 and agreement to be bound by the other promises and provisions contained in this General Release.

   b. One-half of the gross amounts paid to Plaintiff will be paid by payroll check for any (disputed) compensation or compensatory damages claim for wages to Plaintiff, subject to deduction for taxes and withholdings, and with Publix's payment of usual and customary employer payroll taxes, reported as to the IRS and Plaintiff by IRS Form W-2. The other half will be paid for any (disputed) non-wage claim for interest, penalties, or liquidated damages, without deduction for taxes and withholdings, reported to the IRS and Plaintiff by IRS Form 1099.

   c. Publix shall remit the amounts to be paid under this General Release to Plaintiff's counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

3. **Waiver and Release of Non-FLSA Employment Claims**

   a.  Plaintiffs, for themselves and their spouses, heirs, attorneys, executors, administrators, representatives, successors and assigns, release and forever discharge Publix, its predecessors, former and current parents and subsidiaries and related and affiliated companies, and their respective past and present employees, owners, directors, officers, agents, shareholders, investors, members, insurers, attorneys, executors, assigns, and other representatives of any kind, whether or not acting in their official capacity, and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties") from all, liability, claims, damages, attorney's fees, costs and expenses, and causes of action for all non-FLSA and non-wage and hour

labor and employment claims related to or arising out of each Plaintiff's application for employment, employment with or employment relationship to the Released Parties, the cessation of that employment, the compensation payable in connection with that employment or the cessation of that employment, that arose or are arising or accruing because of Plaintiffs' employment by Publix through and including the date on which the Court approves the FLSA Settlement in the Lawsuit; except that the Lawsuit did not involve and does not affect employee benefits owed, payments of these settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any proceeds disbursed to Plaintiffs under this Release. Plaintiffs hereby specifically waive and release any claim, demand, action, or cause of action, including claims for attorneys' fees, costs and expenses of any kind based on but not limited to any claim under any federal, state or governmental constitution, statute, regulation or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(2); the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*; the Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; the Lilly Ledbetter Fair Pay Act of 2009; the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, *et seq.*; the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681, *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*; the Georgia Age Discrimination in Employment Act, Ga. Code Ann. § 34-1-2; the Georgia Equal Employment for Persons with Disabilities Code, Ga. Code Ann. § 34-6A-2; the Georgia Sex Discrimination in Employment Act, Ga. Code Ann. § 34-5-1, *et seq.*; the Constitutions of each state or commonwealth of Plaintiff's work location on her last date of employment. Plaintiffs further specifically waive and release any claim arising out of or related to their employment with Publix under common law or statutory torts, any claim for breach of an agreement or covenant, oral or written, express or implied, between Plaintiffs and the Released Parties, or any claim for breach of any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); any claim under any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing. Nothing in the General Release shall be intended to limit or restrict any rights the Released Parties may have to enforce the General Release or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished.

Notwithstanding the foregoing, nothing in this General Release Agreement prohibits or prevents the Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding

before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor limits any Plaintiff from exercising his or her rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees. However, to the maximum extent permitted by law, the Plaintiffs agree that if such an administrative claim is made in any charge, complaint, lawsuit or other proceeding brought by any Plaintiff or on any Plaintiff's behalf by any third party, they shall not be entitled to recover any individual monetary relief or other individual remedies from the Released Parties on the Released Claims, except for any right Plaintiffs may have to receive a payment or award from a government agency (and not the Released Parties) for information provided to a government agency.

4. **Plaintiffs' ADEA Waiver and Acknowledgements**

a.      Plaintiff knowingly and voluntarily waives any rights and claims under the Federal Age Discrimination in Employment Act of 1967, as amended, the Older Workers Benefit Protection Act of 1990, as amended, 29 U.S.C. § 621 *et seq.* (together, the "ADEA"), and under the other statutes and laws set forth in Section 2(a), above. However, Plaintiff acknowledges and understands that he or she is not waiving any claims for age discrimination under the ADEA that may arise after the date he or she signs this General Release, and he or she is not waiving any vested benefits, if any.

b.      Plaintiff confirms that he or she has been given at least twenty-one (21) calendar days to consider this General Release, which time is sufficient and satisfies any notification requirements that may exist. Plaintiff is and has been advised to consult with an attorney before executing this General Release and by signing this General Release Plaintiff confirms that he or she has had a fair and full opportunity to do so and that Plaintiff, indeed, consulted with an attorney prior to executing this General Release.

c.      Plaintiff has entered into this General Release knowingly and voluntarily with full understanding of its terms and after having had the opportunity to seek and receive advice and counsel from Plaintiff's Counsel.

d.      Plaintiff may revoke his or her acceptance of this General Release within seven (7) calendar days after he or she signs it. Revocation is effective only by providing written notice to Publix's lead counsel of record in the Lawsuit.

e.      If Plaintiff revokes his or her acceptance of this General Release within the seven (7) day revocation period under subsection (d) above, this General Release will be null and void and Plaintiff will not receive any payment or other consideration related to this General Release.

5. **No Obligation**

Plaintiff agrees that absent his or her entry into this General Release, he or she is not presently entitled to the consideration set forth in this Agreement, or any component thereof, under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any

3

Plaintiff or Publix. The payments and other consideration to be provided Plaintiff under this General Release are solely in exchange for his or her promises and affirmations in the General Release, including his or her waiver and release of claims herein, and represent amounts and/or other consideration in excess of any amounts to which he or she is otherwise entitled under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any Plaintiff or Publix.

6.  **No Other Claims**

With the exception of the Lawsuit, Plaintiff represents that he or she has not filed, lodged, claimed, or asserted any charge, complaint, claim, causes of action, debt, sum of money, controversy agreement, promise, or damages of any sort, including any such action alleging any failure to provide any wages, compensation, or reimbursements allegedly due or seeking penalties or recovery of any sort based on any such alleged failure against Publix, and/or to the best of their knowledge against the Released Parties with any state, federal or local agency or court. Plaintiff further represents that he or she has not assigned to others their right to file, nor to the best of their knowledge are there currently pending, any complaints or lawsuits against the Released Parties with any court other than the Lawsuit, and that they will not file, or assign to others their right to file, or make any further claims against the Released Parties at any time for the Released Claims herein. Each signatory hereby warrants and represents that he or she or it has authority to bind the party or parties for whom such signatory acts, even those who are not signatories hereto, and further warrant and represents that the claims, suits, rights, and/or interests which are the subject matter of this litigation are owned by the party asserting same and have not been assigned, pledged, transferred or sold, except in connection with any fee agreement that such party has entered into with him or her or its counsel of record. Plaintiff understands and agrees that if any class or other action is brought by a third party with regard to the Released Claims released in this General Release, Plaintiff will not accept any payments or monetary relief relating to any such claims or causes of action. Further, Plaintiff affirms that he or she has been paid, or will have been paid once he or she receives all agreed amounts under the settlement of the Lawsuit compromising their overtime claims, all leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits to which they may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits are due to them.

7.  **Tax Indemnity**

Plaintiff acknowledges and agree that Publix has made no representations regarding the tax consequences of any amounts received pursuant to this General Release and agrees to pay all federal and state taxes which are required by law to be paid by them with respect to employee's share of taxes owed on the settlement proceeds. Plaintiff agrees that, in the event that any tax, penalty or liability of any kind is assessed against or incurred by Publix by reason of the payments described in Section 1 (except any liability assessed solely because of Publix's failure to pay the amounts

4

due in Section 1), Plaintiff will fully and completely indemnify and hold harmless Publix (and any of the Released Parties) from any liability, claim, judgment, attorneys' fees, expenses, and costs incurred by any Released Party in connection with the tax treatment of any of the payments and/or the method utilized to make any of the payments in Section 1.

8. **Court Approval**

The terms of this General Release are contingent upon Court approval of the settlement in the Lawsuit, which includes non-rejection of this General Release. If the Court in the Lawsuit rejects the Plaintiff's General Release and/or its payments, the FLSA Settlement agreement survives and the rejected amounts from the General Release will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court. If the Court in the Lawsuit reduces the General Release payments, the FLSA Settlement and the releases given in this General Release survive, and the rejected amount from the General Releases will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court.

9. **Counterparts and Electronic Signatures**

This General Release may be executed in counterparts, each of which shall be deemed to be an original executed agreement and which together shall be deemed to be one and the same instrument. An electronic signature, or facsimile or copy of a signature, shall be treated as an original signature for all purposes.

10. **Knowing and Voluntary Waiver**

The Parties acknowledge and agree they had sufficient time to consider this General Release and consult with legal counsel of their choosing concerning its meaning. When entering into this General Release, the Parties have not relied on any representations or warranties made by the Parties, other than representations and warranties expressly set forth in this General Release.

11. **Choice of Law**

The enforcement of this General Release shall be governed and interpreted by, and under, the laws of the State of Georgia without giving effect to the principles of conflicts of laws thereof regardless of whether any party is, or may hereafter be, a resident of another state.

12. **General Release Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this General Release will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties. If the Court rejects the FLSA Settlement in whole or in part due

to this General Release, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval of the FLSA Settlement again.

13. **Amendments/Modifications**

No modification, or amendment of the terms of this General Release by any Party shall be valid or binding unless in writing, signed by all of the Parties.

14. **Binding Agreement**

This General Release shall be binding upon, and inure to the benefit of, the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

15. **Non-Disparagement**

Plaintiffs agree that they will not make any negative, disparaging, libelous, slanderous, or defamatory statements about Publix or its products, services, or business and employment practices, regardless of the truth or falsity of such statements to anyone including, but not limited to, Publix's customers, vendors, suppliers, employees, and/or competitors. For purposes of this Paragraph, "Publix" includes Publix's employees, officers, directors, shareholders, executives, agents, attorneys, and any affiliated or related organizations.

16. **No Re-hire**

Plaintiffs not currently employed by Publix agree that Publix has no duty to reemploy or rehire Employee in any capacity at any time. Plaintiffs not currently employed by Publix further agree not to seek or accept future employment with Publix in any position or capacity and waives any and all rights to be rehired, reemployed, or reinstated by Publix.

17. **No Third-Party Beneficiaries**

The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this General Release, that the Parties have the sole right and exclusive authority to execute this General Release, and that none of the Parties have sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, or legal right that is the subject of this General Release. This General Release shall not be construed to create rights in, grant remedies to, or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of this General Release.

6

18. **Entire Agreement**

This General Release constitutes the entire agreement of the Parties concerning the subjects addressed by the release herein, but not as to subjects not addressed by the release including (and without affecting) the FLSA Settlement.

19. **Captions**

The captions or headings of the sections and paragraphs of this General Release have been inserted for convenience only, and shall have no effect on the construction or interpretation of any part of this General Release.

20. **Interpretation**

The language of all parts of this General Release shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

21. **Effective Date**

This General Release shall become effective upon the entry of the Court's final ruling approving the FLSA Settlement in this Lawsuit.

22. **Signatories**

Each person executing this General Release, including execution on behalf of the corporate defendant, warrants and represents that such person has the authority to do so.

By: _____
Kevin Jacobs
Dated: 06/18/2021

By: _____
Publix Super Markets, Inc.
Dated: 6/29/21

## GENERAL RELEASE AGREEMENT

This General Release Agreement ("General Release") is entered into by Publix Super Markets, Inc. ("Publix"), and Danylle McHardy ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit"), as memorialized in a separate FLSA Settlement Agreement ("FLSA Agreement"), and hereby agree to settle any other claims not alleged in the Lawsuit by this General Release.

## AGREEMENT

1. **No Admission of Liability**

    By agreeing to this General Release, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.

2. **Consideration**

    a. Plaintiff will receive from Publix payment of $1,500 in exchange for which Plaintiff gives the release specified below in Section 3 and agreement to be bound by the other promises and provisions contained in this General Release.

    b. One-half of the gross amounts paid to Plaintiff will be paid by payroll check for any (disputed) compensation or compensatory damages claim for wages to Plaintiff, subject to deduction for taxes and withholdings, and with Publix's payment of usual and customary employer payroll taxes, reported as to the IRS and Plaintiff by IRS Form W-2. The other half will be paid for any (disputed) non-wage claim for interest, penalties, or liquidated damages, without deduction for taxes and withholdings, reported to the IRS and Plaintiff by IRS Form 1099.

    c. Publix shall remit the amounts to be paid under this General Release to Plaintiff's counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

3. **Waiver and Release of Non-FLSA Employment Claims**

    a.    Plaintiffs, for themselves and their spouses, heirs, attorneys, executors, administrators, representatives, successors and assigns, release and forever discharge Publix, its predecessors, former and current parents and subsidiaries and related and affiliated companies, and their respective past and present employees, owners, directors, officers, agents, shareholders, investors, members, insurers, attorneys, executors, assigns, and other representatives of any kind, whether or not acting in their official capacity, and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties") from all, liability, claims, damages, attorney's fees, costs and expenses, and causes of action for all non-FLSA and non-wage and hour

labor and employment claims related to or arising out of each Plaintiff's application for employment, employment with or employment relationship to the Released Parties, the cessation of that employment, the compensation payable in connection with that employment or the cessation of that employment, that arose or are arising or accruing because of Plaintiffs' employment by Publix through and including the date on which the Court approves the FLSA Settlement in the Lawsuit; except that the Lawsuit did not involve and does not affect employee benefits owed, payments of these settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any proceeds disbursed to Plaintiffs under this Release. Plaintiffs hereby specifically waive and release any claim, demand, action, or cause of action, including claims for attorneys' fees, costs and expenses of any kind based on but not limited to any claim under any federal, state or governmental constitution, statute, regulation or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(2); the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*; the Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; the Lilly Ledbetter Fair Pay Act of 2009; the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, *et seq.*; the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681, *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*; the Georgia Age Discrimination in Employment Act, Ga. Code Ann. § 34-1-2; the Georgia Equal Employment for Persons with Disabilities Code, Ga. Code Ann. § 34-6A-2; the Georgia Sex Discrimination in Employment Act, Ga. Code Ann. § 34-5-1, *et seq.*; the Constitutions of each state or commonwealth of Plaintiff's work location on her last date of employment. Plaintiffs further specifically waive and release any claim arising out of or related to their employment with Publix under common law or statutory torts, any claim for breach of an agreement or covenant, oral or written, express or implied, between Plaintiffs and the Released Parties, or any claim for breach of any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); any claim under any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing. Nothing in the General Release shall be intended to limit or restrict any rights the Released Parties may have to enforce the General Release or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished.

Notwithstanding the foregoing, nothing in this General Release Agreement prohibits or prevents the Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding

before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor limits any Plaintiff from exercising his or her rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees. However, to the maximum extent permitted by law, the Plaintiffs agree that if such an administrative claim is made in any charge, complaint, lawsuit or other proceeding brought by any Plaintiff or on any Plaintiff's behalf by any third party, they shall not be entitled to recover any individual monetary relief or other individual remedies from the Released Parties on the Released Claims, except for any right Plaintiffs may have to receive a payment or award from a government agency (and not the Released Parties) for information provided to a government agency.

4. **Plaintiffs' ADEA Waiver and Acknowledgements**

   a.   Plaintiff knowingly and voluntarily waives any rights and claims under the Federal Age Discrimination in Employment Act of 1967, as amended, the Older Workers Benefit Protection Act of 1990, as amended, 29 U.S.C. § 621 *et seq.* (together, the "ADEA"), and under the other statutes and laws set forth in Section 2(a), above. However, Plaintiff acknowledges and understands that he or she is not waiving any claims for age discrimination under the ADEA that may arise after the date he or she signs this General Release, and he or she is not waiving any vested benefits, if any.

   b.   Plaintiff confirms that he or she has been given at least twenty-one (21) calendar days to consider this General Release, which time is sufficient and satisfies any notification requirements that may exist. Plaintiff is and has been advised to consult with an attorney before executing this General Release and by signing this General Release Plaintiff confirms that he or she has had a fair and full opportunity to do so and that Plaintiff, indeed, consulted with an attorney prior to executing this General Release.

   c.   Plaintiff has entered into this General Release knowingly and voluntarily with full understanding of its terms and after having had the opportunity to seek and receive advice and counsel from Plaintiff's Counsel.

   d.   Plaintiff may revoke his or her acceptance of this General Release within seven (7) calendar days after he or she signs it. Revocation is effective only by providing written notice to Publix's lead counsel of record in the Lawsuit.

   e.   If Plaintiff revokes his or her acceptance of this General Release within the seven (7) day revocation period under subsection (d) above, this General Release will be null and void and Plaintiff will not receive any payment or other consideration related to this General Release.

5. **No Obligation**

Plaintiff agrees that absent his or her entry into this General Release, he or she is not presently entitled to the consideration set forth in this Agreement, or any component thereof, under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any

Plaintiff or Publix. The payments and other consideration to be provided Plaintiff under this General Release are solely in exchange for his or her promises and affirmations in the General Release, including his or her waiver and release of claims herein, and represent amounts and/or other consideration in excess of any amounts to which he or she is otherwise entitled under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any Plaintiff or Publix.

6. **No Other Claims**

With the exception of the Lawsuit, Plaintiff represents that he or she has not filed, lodged, claimed, or asserted any charge, complaint, claim, causes of action, debt, sum of money, controversy agreement, promise, or damages of any sort, including any such action alleging any failure to provide any wages, compensation, or reimbursements allegedly due or seeking penalties or recovery of any sort based on any such alleged failure against Publix, and/or to the best of their knowledge against the Released Parties with any state, federal or local agency or court. Plaintiff further represents that he or she has not assigned to others their right to file, nor to the best of their knowledge are there currently pending, any complaints or lawsuits against the Released Parties with any court other than the Lawsuit, and that they will not file, or assign to others their right to file, or make any further claims against the Released Parties at any time for the Released Claims herein. Each signatory hereby warrants and represents that he or she or it has authority to bind the party or parties for whom such signatory acts, even those who are not signatories hereto, and further warrant and represents that the claims, suits, rights, and/or interests which are the subject matter of this litigation are owned by the party asserting same and have not been assigned, pledged, transferred or sold, except in connection with any fee agreement that such party has entered into with him or her or its counsel of record. Plaintiff understands and agrees that if any class or other action is brought by a third party with regard to the Released Claims released in this General Release, Plaintiff will not accept any payments or monetary relief relating to any such claims or causes of action. Further, Plaintiff affirms that he or she has been paid, or will have been paid once he or she receives all agreed amounts under the settlement of the Lawsuit compromising their overtime claims, all leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits to which they may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits are due to them.

7. **Tax Indemnity**

Plaintiff acknowledges and agree that Publix has made no representations regarding the tax consequences of any amounts received pursuant to this General Release and agrees to pay all federal and state taxes which are required by law to be paid by them with respect to employee's share of taxes owed on the settlement proceeds. Plaintiff agrees that, in the event that any tax, penalty or liability of any kind is assessed against or incurred by Publix by reason of the payments described in Section 1 (except any liability assessed solely because of Publix's failure to pay the amounts

4

due in Section 1), Plaintiff will fully and completely indemnify and hold harmless Publix (and any of the Released Parties) from any liability, claim, judgment, attorneys' fees, expenses, and costs incurred by any Released Party in connection with the tax treatment of any of the payments and/or the method utilized to make any of the payments in Section 1.

8. **Court Approval**

The terms of this General Release are contingent upon Court approval of the settlement in the Lawsuit, which includes non-rejection of this General Release. If the Court in the Lawsuit rejects the Plaintiff's General Release and/or its payments, the FLSA Settlement agreement survives and the rejected amounts from the General Release will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court. If the Court in the Lawsuit reduces the General Release payments, the FLSA Settlement and the releases given in this General Release survive, and the rejected amount from the General Releases will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court.

9. **Counterparts and Electronic Signatures**

This General Release may be executed in counterparts, each of which shall be deemed to be an original executed agreement and which together shall be deemed to be one and the same instrument. An electronic signature, or facsimile or copy of a signature, shall be treated as an original signature for all purposes.

10. **Knowing and Voluntary Waiver**

The Parties acknowledge and agree they had sufficient time to consider this General Release and consult with legal counsel of their choosing concerning its meaning. When entering into this General Release, the Parties have not relied on any representations or warranties made by the Parties, other than representations and warranties expressly set forth in this General Release.

11. **Choice of Law**

The enforcement of this General Release shall be governed and interpreted by, and under, the laws of the State of Georgia without giving effect to the principles of conflicts of laws thereof regardless of whether any party is, or may hereafter be, a resident of another state.

12. **General Release Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this General Release will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties. If the Court rejects the FLSA Settlement in whole or in part due

5

to this General Release, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval of the FLSA Settlement again.

13. **Amendments/Modifications**

No modification, or amendment of the terms of this General Release by any Party shall be valid or binding unless in writing, signed by all of the Parties.

14. **Binding Agreement**

This General Release shall be binding upon, and inure to the benefit of, the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

15. **Non-Disparagement**

Plaintiffs agree that they will not make any negative, disparaging, libelous, slanderous, or defamatory statements about Publix or its products, services, or business and employment practices, regardless of the truth or falsity of such statements to anyone including, but not limited to, Publix's customers, vendors, suppliers, employees, and/or competitors.  For purposes of this Paragraph, "Publix" includes Publix's employees, officers, directors, shareholders, executives, agents, attorneys, and any affiliated or related organizations.

16. **No Re-hire**

Plaintiffs not currently employed by Publix agree that Publix has no duty to reemploy or rehire Employee in any capacity at any time.  Plaintiffs not currently employed by Publix further agree not to seek or accept future employment with Publix in any position or capacity and waives any and all rights to be rehired, reemployed, or reinstated by Publix.

17. **No Third-Party Beneficiaries**

The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this General Release, that the Parties have the sole right and exclusive authority to execute this General Release, and that none of the Parties have sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, or legal right that is the subject of this General Release. This General Release shall not be construed to create rights in, grant remedies to, or

6

delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of this General Release.

18. **Entire Agreement**

This General Release constitutes the entire agreement of the Parties concerning the subjects addressed by the release herein, but not as to subjects not addressed by the release including (and without affecting) the FLSA Settlement.

19. **Captions**

The captions or headings of the sections and paragraphs of this General Release have been inserted for convenience only, and shall have no effect on the construction or interpretation of any part of this General Release.

20. **Interpretation**

The language of all parts of this General Release shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

21. **Effective Date**

This General Release shall become effective upon the entry of the Court's final ruling approving the FLSA Settlement in this Lawsuit.

22. **Signatories**

Each person executing this General Release, including execution on behalf of the corporate defendant, warrants and represents that such person has the authority to do so.

By: _Danyle McHardy_                     By: _____
Danylle McHardy                          Publix Super Markets, Inc.
Dated: 06/18/2021                         Dated: 6/29/21

7

## GENERAL RELEASE AGREEMENT

This General Release Agreement ("General Release") is entered into by Publix Super Markets, Inc. ("Publix"), and Kristie McNair ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit"), as memorialized in a separate FLSA Settlement Agreement ("FLSA Agreement"), and hereby agree to settle any other claims not alleged in the Lawsuit by this General Release.

### AGREEMENT

1. **No Admission of Liability**

    By agreeing to this General Release, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.

2. **Consideration**

    a.  Plaintiff will receive from Publix payment of $1,500 in exchange for which Plaintiff gives the release specified below in Section 3 and agreement to be bound by the other promises and provisions contained in this General Release.

    b.  One-half of the gross amounts paid to Plaintiff will be paid by payroll check for any (disputed) compensation or compensatory damages claim for wages to Plaintiff, subject to deduction for taxes and withholdings, and with Publix's payment of usual and customary employer payroll taxes, reported as to the IRS and Plaintiff by IRS Form W-2. The other half will be paid for any (disputed) non-wage claim for interest, penalties, or liquidated damages, without deduction for taxes and withholdings, reported to the IRS and Plaintiff by IRS Form 1099.

    c.  Publix shall remit the amounts to be paid under this General Release to Plaintiff's counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

3. **Waiver and Release of Non-FLSA Employment Claims**

    a.      Plaintiffs, for themselves and their spouses, heirs, attorneys, executors, administrators, representatives, successors and assigns, release and forever discharge Publix, its predecessors, former and current parents and subsidiaries and related and affiliated companies, and their respective past and present employees, owners, directors, officers, agents, shareholders, investors, members, insurers, attorneys, executors, assigns, and other representatives of any kind, whether or not acting in their official capacity, and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties") from all, liability, claims, damages, attorney's fees, costs and expenses, and causes of action for all non-FLSA and non-wage and hour

labor and employment claims related to or arising out of each Plaintiff's application for employment, employment with or employment relationship to the Released Parties, the cessation of that employment, the compensation payable in connection with that employment or the cessation of that employment, that arose or are arising or accruing because of Plaintiffs' employment by Publix through and including the date on which the Court approves the FLSA Settlement in the Lawsuit; except that the Lawsuit did not involve and does not affect employee benefits owed, payments of these settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any proceeds disbursed to Plaintiffs under this Release. Plaintiffs hereby specifically waive and release any claim, demand, action, or cause of action, including claims for attorneys' fees, costs and expenses of any kind based on but not limited to any claim under any federal, state or governmental constitution, statute, regulation or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(2); the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*; the Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; the Lilly Ledbetter Fair Pay Act of 2009; the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, *et seq.*; the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681, *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*; the Georgia Age Discrimination in Employment Act, Ga. Code Ann. § 34-1-2; the Georgia Equal Employment for Persons with Disabilities Code, Ga. Code Ann. § 34-6A-2; the Georgia Sex Discrimination in Employment Act, Ga. Code Ann. § 34-5-1, *et seq.*; the Constitutions of each state or commonwealth of Plaintiff's work location on her last date of employment. Plaintiffs further specifically waive and release any claim arising out of or related to their employment with Publix under common law or statutory torts, any claim for breach of an agreement or covenant, oral or written, express or implied, between Plaintiffs and the Released Parties, or any claim for breach of any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); any claim under any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing. Nothing in the General Release shall be intended to limit or restrict any rights the Released Parties may have to enforce the General Release or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished.

Notwithstanding the foregoing, nothing in this General Release Agreement prohibits or prevents the Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding

before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor limits any Plaintiff from exercising his or her rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees.   However, to the maximum extent permitted by law, the Plaintiffs agree that if such an administrative claim is made in any charge, complaint, lawsuit or other proceeding brought by any Plaintiff or on any Plaintiff's behalf by any third party, they shall not be entitled to recover any individual monetary relief or other individual remedies from the Released Parties on the Released Claims, except for any right Plaintiffs may have to receive a payment or award from a government agency (and not the Released Parties) for information provided to a government agency.

4. **Plaintiffs' ADEA Waiver and Acknowledgements**

a.     Plaintiff knowingly and voluntarily waives any rights and claims under the Federal Age Discrimination in Employment Act of 1967, as amended, the Older Workers Benefit Protection Act of 1990, as amended, 29 U.S.C. § 621 *et seq.* (together, the "ADEA"), and under the other statutes and laws set forth in Section 2(a), above. However, Plaintiff acknowledges and understands that he or she is not waiving any claims for age discrimination under the ADEA that may arise after the date he or she signs this General Release, and he or she is not waiving any vested benefits, if any.

b.     Plaintiff confirms that he or she has been given at least twenty-one (21) calendar days to consider this General Release, which time is sufficient and satisfies any notification requirements that may exist. Plaintiff is and has been advised to consult with an attorney before executing this General Release and by signing this General Release Plaintiff confirms that he or she has had a fair and full opportunity to do so and that Plaintiff, indeed, consulted with an attorney prior to executing this General Release.

c.     Plaintiff has entered into this General Release knowingly and voluntarily with full understanding of its terms and after having had the opportunity to seek and receive advice and counsel from Plaintiff's Counsel.

d.     Plaintiff may revoke his or her acceptance of this General Release within seven (7) calendar days after he or she signs it. Revocation is effective only by providing written notice to Publix's lead counsel of record in the Lawsuit.

e.     If Plaintiff revokes his or her acceptance of this General Release within the seven (7) day revocation period under subsection (d) above, this General Release will be null and void and Plaintiff will not receive any payment or other consideration related to this General Release.

5. **No Obligation**

Plaintiff agrees that absent his or her entry into this General Release, he or she is not presently entitled to the consideration set forth in this Agreement, or any component thereof, under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any

Plaintiff or Publix. The payments and other consideration to be provided Plaintiff under this General Release are solely in exchange for his or her promises and affirmations in the General Release, including his or her waiver and release of claims herein, and represent amounts and/or other consideration in excess of any amounts to which he or she is otherwise entitled under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any Plaintiff or Publix.

6.  **No Other Claims**

With the exception of the Lawsuit, Plaintiff represents that he or she has not filed, lodged, claimed, or asserted any charge, complaint, claim, causes of action, debt, sum of money, controversy agreement, promise, or damages of any sort, including any such action alleging any failure to provide any wages, compensation, or reimbursements allegedly due or seeking penalties or recovery of any sort based on any such alleged failure against Publix, and/or to the best of their knowledge against the Released Parties with any state, federal or local agency or court. Plaintiff further represents that he or she has not assigned to others their right to file, nor to the best of their knowledge are there currently pending, any complaints or lawsuits against the Released Parties with any court other than the Lawsuit, and that they will not file, or assign to others their right to file, or make any further claims against the Released Parties at any time for the Released Claims herein. Each signatory hereby warrants and represents that he or she or it has authority to bind the party or parties for whom such signatory acts, even those who are not signatories hereto, and further warrant and represents that the claims, suits, rights, and/or interests which are the subject matter of this litigation are owned by the party asserting same and have not been assigned, pledged, transferred or sold, except in connection with any fee agreement that such party has entered into with him or her or its counsel of record. Plaintiff understands and agrees that if any class or other action is brought by a third party with regard to the Released Claims released in this General Release, Plaintiff will not accept any payments or monetary relief relating to any such claims or causes of action. Further, Plaintiff affirms that he or she has been paid, or will have been paid once he or she receives all agreed amounts under the settlement of the Lawsuit compromising their overtime claims, all leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits to which they may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits are due to them.

7.  **Tax Indemnity**

Plaintiff acknowledges and agree that Publix has made no representations regarding the tax consequences of any amounts received pursuant to this General Release and agrees to pay all federal and state taxes which are required by law to be paid by them with respect to employee's share of taxes owed on the settlement proceeds. Plaintiff agrees that, in the event that any tax, penalty or liability of any kind is assessed against or incurred by Publix by reason of the payments described in Section 1 (except any liability assessed solely because of Publix's failure to pay the amounts

due in Section 1), Plaintiff will fully and completely indemnify and hold harmless Publix (and any of the Released Parties) from any liability, claim, judgment, attorneys' fees, expenses, and costs incurred by any Released Party in connection with the tax treatment of any of the payments and/or the method utilized to make any of the payments in Section 1.

8. **Court Approval**

The terms of this General Release are contingent upon Court approval of the settlement in the Lawsuit, which includes non-rejection of this General Release.  If the Court in the Lawsuit rejects the Plaintiff's General Release and/or its payments, the FLSA Settlement agreement survives and the rejected amounts from the General Release will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court.  If the Court in the Lawsuit reduces the General Release payments, the FLSA Settlement and the releases given in this General Release survive, and the rejected amount from the General Releases will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court.

9. **Counterparts and Electronic Signatures**

This General Release may be executed in counterparts, each of which shall be deemed to be an original executed agreement and which together shall be deemed to be one and the same instrument.  An electronic signature, or facsimile or copy of a signature, shall be treated as an original signature for all purposes.

10. **Knowing and Voluntary Waiver**

The Parties acknowledge and agree they had sufficient time to consider this General Release and consult with legal counsel of their choosing concerning its meaning.  When entering into this General Release, the Parties have not relied on any representations or warranties made by the Parties, other than representations and warranties expressly set forth in this General Release.

11. **Choice of Law**

The enforcement of this General Release shall be governed and interpreted by, and under, the laws of the State of Georgia without giving effect to the principles of conflicts of laws thereof regardless of whether any party is, or may hereafter be, a resident of another state.

12. **General Release Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this General Release will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties. If the Court rejects the FLSA Settlement in whole or in part due

to this General Release, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval of the FLSA Settlement again.

13. **Amendments/Modifications**

No modification, or amendment of the terms of this General Release by any Party shall be valid or binding unless in writing, signed by all of the Parties.

14. **Binding Agreement**

This General Release shall be binding upon, and inure to the benefit of, the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

15. **Non-Disparagement**

Plaintiffs agree that they will not make any negative, disparaging, libelous, slanderous, or defamatory statements about Publix or its products, services, or business and employment practices, regardless of the truth or falsity of such statements to anyone including, but not limited to, Publix's customers, vendors, suppliers, employees, and/or competitors.  For purposes of this Paragraph, "Publix" includes Publix's employees, officers, directors, shareholders, executives, agents, attorneys, and any affiliated or related organizations.

16. **No Re-hire**

Plaintiffs not currently employed by Publix agree that Publix has no duty to reemploy or rehire Employee in any capacity at any time.  Plaintiffs not currently employed by Publix further agree not to seek or accept future employment with Publix in any position or capacity and waives any and all rights to be rehired, reemployed, or reinstated by Publix.

17. **No Third-Party Beneficiaries**

The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this General Release, that the Parties have the sole right and exclusive authority to execute this General Release, and that none of the Parties have sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, or legal right that is the subject of this General Release. This General Release shall not be construed to create rights in, grant remedies to, or

6

delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of this General Release.

18. **Entire Agreement**

This General Release constitutes the entire agreement of the Parties concerning the subjects addressed by the release herein, but not as to subjects not addressed by the release including (and without affecting) the FLSA Settlement.

19. **Captions**

The captions or headings of the sections and paragraphs of this General Release have been inserted for convenience only, and shall have no effect on the construction or interpretation of any part of this General Release.

20. **Interpretation**

The language of all parts of this General Release shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

21. **Effective Date**

This General Release shall become effective upon the entry of the Court's final ruling approving the FLSA Settlement in this Lawsuit.

22. **Signatories**

Each person executing this General Release, including execution on behalf of the corporate defendant, warrants and represents that such person has the authority to do so.

By: _____
Kristie McNair
Dated: 06/21/2021

By: _____
Publix Super Markets, Inc.
Dated: 6/29/21

## GENERAL RELEASE AGREEMENT

This General Release Agreement ("General Release") is entered into by Publix Super Markets, Inc. ("Publix"), and Takia Walton ("Plaintiff") in *Walton v. Publix Super Markets, Inc.*, No. 1:19-cv-4466 (N.D. Ga.) (the "Lawsuit"), as memorialized in a separate FLSA Settlement Agreement ("FLSA Agreement"), and hereby agree to settle any other claims not alleged in the Lawsuit by this General Release.

## AGREEMENT

1. **No Admission of Liability**

   By agreeing to this General Release, Publix admits no liability of any kind and expressly denies any liability or wrongdoing.

2. **Consideration**

   a. Plaintiff will receive from Publix payment of $1,500 in exchange for which Plaintiff gives the release specified below in Section 3 and agreement to be bound by the other promises and provisions contained in this General Release.

   b. One-half of the gross amounts paid to Plaintiff will be paid by payroll check for any (disputed) compensation or compensatory damages claim for wages to Plaintiff, subject to deduction for taxes and withholdings, and with Publix's payment of usual and customary employer payroll taxes, reported as to the IRS and Plaintiff by IRS Form W-2. The other half will be paid for any (disputed) non-wage claim for interest, penalties, or liquidated damages, without deduction for taxes and withholdings, reported to the IRS and Plaintiff by IRS Form 1099.

   c. Publix shall remit the amounts to be paid under this General Release to Plaintiff's counsel by check (1) within 14 days after the date the Court's Order approving settlement and dismissing the Lawsuit with prejudice becomes a final, non-appealable order, or (2) within 37 days of W-4 and W-9 forms for each Plaintiff being delivered to Publix, whichever is later.

3. **Waiver and Release of Non-FLSA Employment Claims**

   a. Plaintiffs, for themselves and their spouses, heirs, attorneys, executors, administrators, representatives, successors and assigns, release and forever discharge Publix, its predecessors, former and current parents and subsidiaries and related and affiliated companies, and their respective past and present employees, owners, directors, officers, agents, shareholders, investors, members, insurers, attorneys, executors, assigns, and other representatives of any kind, whether or not acting in their official capacity, and all persons acting by, through, under, or in concert with any of them (collectively, the "Released Parties") from all, liability, claims, damages, attorney's fees, costs and expenses, and causes of action for all non-FLSA and non-wage and hour

labor and employment claims related to or arising out of each Plaintiff's application for employment, employment with or employment relationship to the Released Parties, the cessation of that employment, the compensation payable in connection with that employment or the cessation of that employment, that arose or are arising or accruing because of Plaintiffs' employment by Publix through and including the date on which the Court approves the FLSA Settlement in the Lawsuit; except that the Lawsuit did not involve and does not affect employee benefits owed, payments of these settlement proceeds to Plaintiffs shall not result in recomputation of any of benefits that may have been provided or made available by Publix and shall not be counted or considered in any manner for purposes of determining benefits under any employee benefit plan maintained by Publix in which Plaintiffs are or were eligible to participate, including benefit accrual purposes under any tax-qualified or non-qualified retirement, savings or employee stock ownership plan. Plaintiffs further agree that no 401(k) benefits will be withheld from any proceeds disbursed to Plaintiffs under this Release. Plaintiffs hereby specifically waive and release any claim, demand, action, or cause of action, including claims for attorneys' fees, costs and expenses of any kind based on but not limited to any claim under any federal, state or governmental constitution, statute, regulation or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(2); the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*; the Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; the Lilly Ledbetter Fair Pay Act of 2009; the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, *et seq.*; the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681, *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*; the Georgia Age Discrimination in Employment Act, Ga. Code Ann. § 34-1-2; the Georgia Equal Employment for Persons with Disabilities Code, Ga. Code Ann. § 34-6A-2; the Georgia Sex Discrimination in Employment Act, Ga. Code Ann. § 34-5-1, *et seq.*; the Constitutions of each state or commonwealth of Plaintiff's work location on her last date of employment. Plaintiffs further specifically waive and release any claim arising out of or related to their employment with Publix under common law or statutory torts, any claim for breach of an agreement or covenant, oral or written, express or implied, between Plaintiffs and the Released Parties, or any claim for breach of any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); any claim under any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing. Nothing in the General Release shall be intended to limit or restrict any rights the Released Parties may have to enforce the General Release or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished.

Notwithstanding the foregoing, nothing in this General Release Agreement prohibits or prevents the Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding

before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor limits any Plaintiff from exercising his or her rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees.   However, to the maximum extent permitted by law, the Plaintiffs agree that if such an administrative claim is made in any charge, complaint, lawsuit or other proceeding brought by any Plaintiff or on any Plaintiff's behalf by any third party, they shall not be entitled to recover any individual monetary relief or other individual remedies from the Released Parties on the Released Claims, except for any right Plaintiffs may have to receive a payment or award from a government agency (and not the Released Parties) for information provided to a government agency.

4. **Plaintiffs' ADEA Waiver and Acknowledgements**

a.     Plaintiff knowingly and voluntarily waives any rights and claims under the Federal Age Discrimination in Employment Act of 1967, as amended, the Older Workers Benefit Protection Act of 1990, as amended, 29 U.S.C. § 621 *et seq.* (together, the "ADEA"), and under the other statutes and laws set forth in Section 2(a), above. However, Plaintiff acknowledges and understands that he or she is not waiving any claims for age discrimination under the ADEA that may arise after the date he or she signs this General Release, and he or she is not waiving any vested benefits, if any.

b.     Plaintiff confirms that he or she has been given at least twenty-one (21) calendar days to consider this General Release, which time is sufficient and satisfies any notification requirements that may exist. Plaintiff is and has been advised to consult with an attorney before executing this General Release and by signing this General Release Plaintiff confirms that he or she has had a fair and full opportunity to do so and that Plaintiff, indeed, consulted with an attorney prior to executing this General Release.

c.     Plaintiff has entered into this General Release knowingly and voluntarily with full understanding of its terms and after having had the opportunity to seek and receive advice and counsel from Plaintiff's Counsel.

d.     Plaintiff may revoke his or her acceptance of this General Release within seven (7) calendar days after he or she signs it. Revocation is effective only by providing written notice to Publix's lead counsel of record in the Lawsuit.

e.     If Plaintiff revokes his or her acceptance of this General Release within the seven (7) day revocation period under subsection (d) above, this General Release will be null and void and Plaintiff will not receive any payment or other consideration related to this General Release.

5. **No Obligation**

Plaintiff agrees that absent his or her entry into this General Release, he or she is not presently entitled to the consideration set forth in this Agreement, or any component thereof, under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any

Plaintiff or Publix. The payments and other consideration to be provided Plaintiff under this General Release are solely in exchange for his or her promises and affirmations in the General Release, including his or her waiver and release of claims herein, and represent amounts and/or other consideration in excess of any amounts to which he or she is otherwise entitled under any court, agency, or arbitral determination of the merits of Plaintiff's claim or pursuant to any policy or procedures or by any prior agreement between any Plaintiff or Publix.

6. **No Other Claims**

With the exception of the Lawsuit, Plaintiff represents that he or she has not filed, lodged, claimed, or asserted any charge, complaint, claim, causes of action, debt, sum of money, controversy agreement, promise, or damages of any sort, including any such action alleging any failure to provide any wages, compensation, or reimbursements allegedly due or seeking penalties or recovery of any sort based on any such alleged failure against Publix, and/or to the best of their knowledge against the Released Parties with any state, federal or local agency or court. Plaintiff further represents that he or she has not assigned to others their right to file, nor to the best of their knowledge are there currently pending, any complaints or lawsuits against the Released Parties with any court other than the Lawsuit, and that they will not file, or assign to others their right to file, or make any further claims against the Released Parties at any time for the Released Claims herein. Each signatory hereby warrants and represents that he or she or it has authority to bind the party or parties for whom such signatory acts, even those who are not signatories hereto, and further warrant and represents that the claims, suits, rights, and/or interests which are the subject matter of this litigation are owned by the party asserting same and have not been assigned, pledged, transferred or sold, except in connection with any fee agreement that such party has entered into with him or her or its counsel of record. Plaintiff understands and agrees that if any class or other action is brought by a third party with regard to the Released Claims released in this General Release, Plaintiff will not accept any payments or monetary relief relating to any such claims or causes of action. Further, Plaintiff affirms that he or she has been paid, or will have been paid once he or she receives all agreed amounts under the settlement of the Lawsuit compromising their overtime claims, all leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits to which they may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, vacation pay, and/or benefits are due to them.

7. **Tax Indemnity**

Plaintiff acknowledges and agree that Publix has made no representations regarding the tax consequences of any amounts received pursuant to this General Release and agrees to pay all federal and state taxes which are required by law to be paid by them with respect to employee's share of taxes owed on the settlement proceeds. Plaintiff agrees that, in the event that any tax, penalty or liability of any kind is assessed against or incurred by Publix by reason of the payments described in Section 1 (except any liability assessed solely because of Publix's failure to pay the amounts

4

due in Section 1), Plaintiff will fully and completely indemnify and hold harmless Publix (and any of the Released Parties) from any liability, claim, judgment, attorneys' fees, expenses, and costs incurred by any Released Party in connection with the tax treatment of any of the payments and/or the method utilized to make any of the payments in Section 1.

8. **Court Approval**

The terms of this General Release are contingent upon Court approval of the settlement in the Lawsuit, which includes non-rejection of this General Release. If the Court in the Lawsuit rejects the Plaintiff's General Release and/or its payments, the FLSA Settlement agreement survives and the rejected amounts from the General Release will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court. If the Court in the Lawsuit reduces the General Release payments, the FLSA Settlement and the releases given in this General Release survive, and the rejected amount from the General Releases will be added to the Gross Fund in the FLSA Settlement, unless otherwise ordered by the Court.

9. **Counterparts and Electronic Signatures**

This General Release may be executed in counterparts, each of which shall be deemed to be an original executed agreement and which together shall be deemed to be one and the same instrument. An electronic signature, or facsimile or copy of a signature, shall be treated as an original signature for all purposes.

10. **Knowing and Voluntary Waiver**

The Parties acknowledge and agree they had sufficient time to consider this General Release and consult with legal counsel of their choosing concerning its meaning. When entering into this General Release, the Parties have not relied on any representations or warranties made by the Parties, other than representations and warranties expressly set forth in this General Release.

11. **Choice of Law**

The enforcement of this General Release shall be governed and interpreted by, and under, the laws of the State of Georgia without giving effect to the principles of conflicts of laws thereof regardless of whether any party is, or may hereafter be, a resident of another state.

12. **General Release Term Disputes**

The Parties agree that any disputes over the negotiation, construction or interpretation of terms in the Term Sheet or this General Release will be submitted for resolution by mediation with Hunter Hughes, Esq., or such other mediator mutually selected by the Parties. If the Court rejects the FLSA Settlement in whole or in part due

5

to this General Release, the Parties agree to engage in good faith in follow-up negotiations with the intent to resolve any of the Court's concerns that led to rejection, including if necessary by mediation of unresolved disputes with Hunter Hughes, Esq. The Parties agree that if approval is denied, the Parties will work in good faith to address any deficiencies the Court identifies and seek court approval of the FLSA Settlement again.

13. **Amendments/Modifications**

No modification, or amendment of the terms of this General Release by any Party shall be valid or binding unless in writing, signed by all of the Parties.

14. **Binding Agreement**

This General Release shall be binding upon, and inure to the benefit of, the Parties and their affiliates, beneficiaries, heirs, executors, administrators, successors, and assigns.

15. **Non-Disparagement**

Plaintiffs agree that they will not make any negative, disparaging, libelous, slanderous, or defamatory statements about Publix or its products, services, or business and employment practices, regardless of the truth or falsity of such statements to anyone including, but not limited to, Publix's customers, vendors, suppliers, employees, and/or competitors.   For purposes of this Paragraph, "Publix" includes Publix's employees, officers, directors, shareholders, executives, agents, attorneys, and any affiliated or related organizations.

16. **No Re-hire**

Plaintiffs not currently employed by Publix agree that Publix has no duty to reemploy or rehire Employee in any capacity at any time.   Plaintiffs not currently employed by Publix further agree not to seek or accept future employment with Publix in any position or capacity and waives any and all rights to be rehired, reemployed, or reinstated by Publix.

17. **No Third-Party Beneficiaries**

The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this General Release, that the Parties have the sole right and exclusive authority to execute this General Release, and that none of the Parties have sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand, or legal right that is the subject of this General Release.

6

This General Release shall not be construed to create rights in, grant remedies to, or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of this General Release.

18. **Entire Agreement**

This General Release constitutes the entire agreement of the Parties concerning the subjects addressed by the release herein, but not as to subjects not addressed by the release including (and without affecting) the FLSA Settlement.

19. **Captions**

The captions or headings of the sections and paragraphs of this General Release have been inserted for convenience only, and shall have no effect on the construction or interpretation of any part of this General Release.

20. **Interpretation**

The language of all parts of this General Release shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

21. **Effective Date**

This General Release shall become effective upon the entry of the Court's final ruling approving the FLSA Settlement in this Lawsuit.

22. **Signatories**

Each person executing this General Release, including execution on behalf of the corporate defendant, warrants and represents that such person has the authority to do so.

By: _____
Takia Walton
Dated:  06/18/2021

By: _____
Publix Super Markets, Inc.
Dated:  6/29/21

7